STATE of Minnesota, Respondent,

v.

Raymond J. ITEN, Appellant.

No. C2–86–966.

Court of Appeals of Minnesota.

Feb. 24, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Anne E. Peek, Asst. Co. Atty., Minneapolis, for respondent.

William R. Kennedy, Hennepin County Public Defender, David M. Duffy, Asst. County Public Defender, Minneapolis, for appellant.

Heard, considered, and decided by CRIPPEN, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Raymond Iten appeals from judgment entered pursuant to a jury verdict convicting him of criminal vehicular operation resulting in death, Minn.Stat. § 609.21, subd. 1(1) (1984). We affirm.

## FACTS

Iten was headed east on Highway 55. When he was approximately 600 feet west of the intersection with South Shore Drive, Iten saw the light turn yellow, and then saw the light turn red when he was approximately 320 feet from the intersection.

Iten decided he would not be able to make a safe stop and honked his horn to alert other cars at the intersection. As he neared the intersection, he saw Marna Quarnstrom's car entering the intersection from the south. He downshifted and moved into the left lane to avoid hitting Quarnstrom, but the truck's right front bumper hit her car. She was thrown from the car onto the road where the truck's rear dual wheels ran over her, killing her instantly. Iten stopped the truck immediately and remained at the scene.

The grand jury indicted Iten after hearing testimony from five eyewitnesses, the medical examiner, and four police officers. An additional eleven eyewitnesses testified at trial. Some gave limited probative testimony. Others gave inconsistent testimony about exact positions, whether the truck sounded its horn or braked before entering the intersection, and the distances, timing, and speeds involved. The great bulk of the testimony, however, both before the grand jury and at trial, was consistent with the facts as summarized above.

Evidence at trial also showed that Iten's brakes were operating at 50% effectiveness due to rust and oil deposits. Even with this impairment, however, the evidence showed that Iten had time to bring the truck to a safe stop had he chosen to do so. Iten did not check the brakes on the truck prior to driving it, although this is required by federal and state regulations, because he was in a hurry.

Iten further testified he did not stop at the intersection because he was afraid the load would shift, the brakes would lock or catch fire, or that the truck would jackknife.

## ISSUES

1. Did the trial court err in refusing to dismiss the indictment?

2. Was the evidence sufficient to support the verdict?

3. Was the suppression of evidence concerning Quarnstrom's use of a seatbelt prejudicial error?

4. Did the trial court err in its jury instructions?

**ANALYSIS**

1. Iten initially argues that the trial court erred in refusing to dismiss the grand jury indictment. He claims that a disproportionate number of the grand jury witnesses testified they did not hear Iten sound his horn and did not think he applied the brakes before the collision.

 Grand juries consider only whether probable cause exists to charge a defendant. Minn.R.Crim.P. 18.06, subd. 2. The true adjudication of a defendant's guilt or innocence remains for the full trial. *State v. Wollan*, 303 N.W.2d 253, 255 (Minn.1981). The trial court noted that eleven of the sixteen eyewitnesses, or 68.75%, stated to police that they heard the truck's horn, while three of the five grand jury witnesses, or 60%, testified they heard the horn. This is an insignificant difference that would not have affected the outcome. Failure to produce all available evidence before the grand jury does not require reversal unless it would have materially affected the proceedings. *State v. Olkon*, 299 N.W.2d 89, 106 (Minn.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981).

2. A person is guilty of criminal vehicular operation resulting in death if he or she caused the death of another person by operating a vehicle in a grossly negligent manner. Minn.Stat. § 609.21, subd. 1(1) (1984). Gross negligence is "the want of even scant care." *State v. Bolsinger*, 221 Minn. 154, 158, 21 N.W.2d 480, 485 (1946). Iten's claim of insufficient evidence requires us to view the evidence in the light most favorable to the prosecution and assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981).

 Iten contends the evidence is insufficient to support the jury's verdict because he believed he did the best he could to avoid the accident under the circumstances. No excessive speed was involved. Iten sounded his horn before entering the intersection. Iten swerved and executed other maneuvers to avoid hitting Quarnstrom's car. He admits his negligence, but contends he exercised much more than "scant care." At the time of Iten's evasive action, however, he had already displayed "want of even scant care" by failing to inspect the truck as required by law and by failing to stop when he had more than sufficient time to do so.

Iten's only defense is his sincere belief that he did not have sufficient time to stop safely. The facts indicate otherwise. Iten admitted the light changed first to yellow and then to red before he reached the intersection. He did not brake at any time before impact. An accident reconstructionist concluded Iten received the yellow light 598 feet back from the point of impact and received the red light 321 feet back from that point.

Viewed in the light most favorable to the State, and without disturbing the jury's right to believe the State's witnesses and to disbelieve any contrary witnesses, the evidence was sufficient to support the verdict.

 3. Iten argues that evidence on whether Quarnstrom was wearing a seatbelt is relevant because of its bearing on proximate cause. Trial courts have broad discretion to exclude evidence on the basis of relevancy. *Olkon*, 299 N.W.2d at 101. The evidence Iten offered concerned only whether Quarnstrom *would* have been thrown from the car *had* she been wearing a seatbelt.

 However, no law required the wearing of seatbelts at the time the accident occurred. Even if a seatbelt would have prevented Quarnstrom's death, any negligence on her part is relevant only if it constituted a superseding intervening cause of the accident. *State v. Ewing*, 250 Minn. 436, 444–45, 84 N.W.2d 904, 911 (1957). Contributory negligence is not a defense to a criminal prosecution. *State v. Crace*, 289 N.W.2d 54, 59 (Minn.1979).

4. The trial court instructed the jury on the elements of criminal vehicular opera-

tion resulting in death, including the definition of gross negligence. The court further instructed the jury on the effect of any negligence by the victim, including the statement that her negligence was relevant "only insofar as it may tend to show that the Defendant was not negligent or that his actions did not constitute the proximate cause of the victim's death."

Appellant contends the trial court erred by refusing to instruct the jury on the definition of proximate cause. Trial courts have broad discretion in determining the propriety of a specific jury instruction. *State v. Shatto*, 285 N.W.2d 492, 493 (Minn.1979). Proximate cause has no application to criminal law. *State v. King*, 367 N.W.2d 599, 602 (Minn.Ct.App.1985). Instruction on proximate cause could only serve to confuse the jury into believing that Quarnstrom's negligence could have caused the accident whereas proximate cause here is relevant only to Iten's own negligence. The trial court's refusal of additional instructions on causation was not an abuse of discretion.

## DECISION

The evidence supported the grand jury indictment and the jury's verdict. Neither evidence concerning the victim's seatbelt nor jury instructions on proximate cause are relevant to this criminal prosecution.

Affirmed.