STATE of Minnesota, Respondent,

v.

Frank Daniel LUND, III, Appellant.

No. C5–90–2070.

Court of Appeals of Minnesota.

July 16, 1991.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Steven B. Taxman, Daniel M. Mohs, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., PETERSON and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

Appellant challenges his conviction for two counts of criminal vehicular operation resulting in death. Minn.Stat. § 609.21, subd. 1(1)–(2) (1988). We affirm.

## FACTS

At 8:00 p.m. July 1, 1989, appellant Frank Daniel Lund, III met his cousin Tom Cunningham at Cunningham's house. The

two men went to a liquor store and returned with beer, vodka and champagne. Appellant drank vodka and mix during the evening. At approximately 11:30 p.m., after appellant had consumed between one-third to one-half of a 700 ml bottle of vodka, appellant and Cunningham went out to a local bar.

Steven Baldwin testified that he was pumping gas into his car, between 1:30 and 1:40 a.m., at a station on Rice Street between County Road B–2 and Demont when he heard a crash and looked up to see a car with a fire burning in its engine. After telling the station attendant to call the police, he ran to the accident scene, went to the car, pulled the driver (appellant) out of the vehicle and dragged him 50 feet away. Returning to the vehicle, he discovered that the passenger (Cunningham) was unconscious and bleeding badly. Baldwin did not move Cunningham.

Baldwin did not see any other cars on the road at the time of the accident and did not hear a horn, squealing tires, braking or any other sound before the crash. When Baldwin pulled appellant from the car, appellant denied being the driver and "wondered what had happened to his car." Appellant further mentioned "crazy drivers" but never said anything regarding a red Mustang. Baldwin believed that appellant was under the influence when he talked to him. He was loud, had slurred speech, and maintained he was alright even though his arm was visibly injured.

Pamela Martin was watching television across the street when she heard the crash. She ran outside and saw a car that had run into a telephone pole. Her boyfriend called police, and then they grabbed a fire extinguisher and went to the accident scene. After checking the passenger, she went to sit with appellant. Martin does not recall hearing any sounds before the crash.

Martin observed that appellant was intoxicated and had a strong odor of alcohol on his breath. She testified that appellant kept attempting to leave the scene of the accident, explaining that "he had to run because he would get in trouble." Appellant also insisted that he was fine, hitting his injured left wrist on the ground twenty or thirty times. Appellant swore about "those crazy drivers." Martin recalled appellant complaining about people turning in front of him.

State Patrol Officer Kenneth Urquhart responded to a call to go to the scene between 1:30 and 1:40 a.m. When he arrived three minutes later, he discovered a Ford Tempo with heavy front end damage in the traffic lane facing northwest. The road surface was dry and the area was well lit.

After checking the passenger and discovering that he had severe head injuries, he checked the driver and found no disabling injuries. The officer noted a "strong odor of alcoholic beverage" from a foot away and that appellant had bloodshot and watery eyes. In the officer's opinion, appellant was under the influence of alcohol.

Both appellant and Cunningham were taken by ambulance to St. Paul–Ramsey Hospital. Cunningham died on July 3, 1989, from traumatic head injuries due to the auto accident.

The emergency room nurse testified that appellant was obnoxious and appeared to be under the influence of alcohol on the night of the accident. He smelled strongly of alcohol and swore at them. At 3:00 a.m., appellant's blood was drawn and tested revealing a blood alcohol concentration of .20.

Robert Meyer, the Criminal Bureau of Apprehension toxicologist, testified that, at a minimum, appellant's blood alcohol level would have been .21 at the time of the accident.

At the hospital, Officer Urquhart talked to appellant. During the conversation, appellant claimed that he only had three beers. Urquhart noticed that appellant staggered when he walked. Appellant told the officer that a red Mustang turned in front of him, thus causing the accident. Appellant, however, was unable to say which way his car was traveling, the direction the other car was traveling or where it turned.

Officer Urquhart and Ramsey County Deputy Edward Hurd found no sign of skid marks, scuffing or other evidence of evasive action at the scene. The only fresh marks were on the curb in front of the pole that the Tempo had struck.

Hurd testified that since the skid marks were in a straight line, the car went gradually southwestward "drift[ing]" from the road and did not take evasive action. Hurd testified that the accident was caused by appellant's inattentive driving.

Appellant's accident reconstructionist, Gerald Tasa, did not dispute that there were no skid marks at the scene. He also admitted that no evidence of evasive action was present. He concluded that the car would have been "turning somewhat" to get off of the roadway. Finally, Tasa conceded that the drifting theory advanced by Deputy Hurd would be consistent with the physical evidence in the case.

During trial, the court ruled pursuant to Minn.R.Evid. 609 that a prior conviction could be used by the state to impeach the appellant if he took the stand in his own defense and that evidence of Cunningham's failure to wear a seatbelt was irrelevant.

## ISSUES

1. Did the trial court err by ruling that evidence of a prior conviction would be admissible if appellant testified without making an explicit determination on the record that the probative value of the conviction was not outweighed by its prejudicial effect?

2. Did the court err by excluding testimony that the victim was not wearing a seatbelt at the time of the accident?

1. The trial court did not make an explicit statement of the basis of his ruling. The court, however, afforded appellant an opportunity to memorialize the court's ruling:

THE COURT: Why don't you just state that on the record.
MR. TAXMAN: It's my understanding, Your Honor, that if—from your prior ruling, that should the defendant take the witness stand at his trial, then you could be allowing the state to impeach his credibility with a prior April 21, 1986 conviction of possession of a short-barreled shotgun. Your Honor, we would strongly oppose that type of ruling, because—

## ANALYSIS

### I.

■ Appellant contends that the trial court erred by failing to state on the record that the probative value of a prior gun conviction was not outweighed by its prejudicial effect.[1]

Minn.R.Evid. 609(a)(1) provides:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect.*

(Emphasis added.) Appellant contends that the requirement that the "court determin[e]" the prejudicial versus probative question compels an explicit statement on the record demonstrating that the court has employed the balancing test.

Appellant urges that without a statement of the trial court's thinking on the record, appellate review of the decision is effectively foreclosed. The 1989 Advisory Committee Comment to rule 609 states:

The trial judge should make explicit findings on the record as to the factors considered and the reasons for admitting or excluding the evidence.

At least two federal appellate courts require a statement on the record of the reason(s) for the court's rule 609 determination. *See, e.g., United States v. Moreno,* 878 F.2d 817, 822–23 (5th Cir.), *cert. de-*

well, Rule 609A of the Minnesota Rules of Evidence, provides the rules for impeachment, attacking the credibility of a witness. And I think the rule indicates it has to be a felony and the probative value must substantially outweigh its prejudicial effect. Now, I think in this particular—
THE COURT: Maybe I can just interrupt you. Is this a felony? Was it in—either a felony in the state court or federal court?
MR. TAXMAN: Your Honor, it was a matter in the state court and it was a felony.
THE COURT: Okay. Just wanted to make sure, for the record.

*nied* 493 U.S. 979, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989); *United States v. Alvarez*, 833 F.2d 724, 727 (7th Cir.1987). Mississippi and California follow a similar procedure. *See McGee v. State*, 569 So.2d 1191, 1195–96 (Miss.1990); *People v. Clarida*, 249 Cal.Rptr. 363, 366, 197 Cal.App.3d 547, 553 (1987).

Only two Minnesota cases, *State v. Kinyon*, 302 N.W.2d 27 (Minn.1981) and *State v. Burrows*, 295 N.W.2d 100 (Minn.1980), advert to the required nature of the Rule 609 trial court "determination." In *Kinyon*, the supreme court wrote:

> Although the intended use of the prior * * * conviction was for impeachment, the trial court apparently ruled on its admission as relevant other-crime evidence * * * *and did not make the required determination that the probative value of the evidence exceeded its prejudicial effect.*

*Kinyon*, 302 N.W.2d at 28–29 (emphasis added). The court concluded in *Kinyon* that in light of the fact that a second conviction would have been admissible, "the error, if any, was harmless." *Id.* at 29.

In *Burrows*, the supreme court stated along similar lines:

> We need not decide whether the trial court erred in concluding that unauthorized use is a crime directly involving "dishonesty or false statement," because even if the trial court *should have made a discretionary determination and balanced probative value against prejudicial effect,* the trial court still would have been justified in admitting the evidence and presumably would have done so.

*Burrows*, 295 N.W.2d at 101 (emphasis added). The court then sustained the admission of the evidence and affirmed the conviction because it "was based on strong evidence of guilt." *Id.*

▮ In light of the language of the committee comment, *Kinyon*, *Burrows* and federal case law, we hold that the trial court should demonstrate on the record that it has exercised the discretion accorded by Minn.R.Evid. 609(a)(1) after considering and balancing the factors set forth in *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978).[2] Having concluded that a court should express its consideration of the *Jones* factors, we nevertheless hold that the *Jones* factors have been met in this case.

Here, the trial judge ruled that a four-year-old felony conviction for possession of a short-barreled shotgun would be admissible and that if introduced, a cautionary instruction would be given.

Appellant contends that the first factor has not been met because the conviction does not bear on appellant's veracity. *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967) (Burger, J.), *cert. denied* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). We cannot agree. Under rule 609(a)(1), the prior conviction need not bear directly on veracity, although convictions for some offenses have less impeachment value than convictions for other offenses.

Citing *State v. Bettin*, 295 N.W.2d 542, 546 (Minn.1980), appellant next argues that the conviction is too remote or "stale" in urging that the defendant must be incarcerated in the interim to preserve the use of the conviction. Again, we cannot agree. *Bettin* does not say what appellant contends it says. The court stated, "The prior conviction * * * was four years old but defendant was in prison in the interim between the two offenses so it would seem that the offense had not lost any relevance by the passage of time." *Id.* Minnesota appellate courts have affirmed the use of convictions of up to ten years in age. *See, e.g., State v. Bowser*, 307 N.W.2d 778, 779 (Minn.1981) (seven-year-old conviction); *State v. Upton*, 306 N.W.2d 117, 118 (Minn.

**2.** The trial court should consider the following factors:

  (a) the impeachment value of the prior conviction,

  (b) the date of the conviction and defendant's subsequent history,

  (c) the similarity of the prior conviction with the charged crime,

  (d) the importance of the defendant's testimony, and

  (e) the centrality of the credibility issue.

*Jones*, 271 N.W.2d at 538.

1981) (use of nine-year-old conviction); *State v. Moyer*, 298 N.W.2d 768, 770 (Minn. 1980) (use of 10–year–old conviction where defendant served time). The introduction of a four-year-old conviction did not constitute error.

Third, appellant concedes that the gun charge and criminal vehicular operation are not similar charges but argues that the lack of similarity merely eliminates the reason for exclusion, it does not provide a *reason* for admission. Appellant, however, concedes that the court would have *discretion* to admit the conviction.

Fourth, appellant argues that his testimony was essential to his defense. He contends that the court's ruling severely impacted the presentation of his theory of the case because he was the only living witness of the actual accident. We disagree. Appellant's defense that a red Mustang turned in front of him, thus precipitating the accident, came into evidence through his statement made at the time of the accident together with the testimony of the accident reconstructionist and the defense investigator. Because his theory of the case was presented to the jury by these other means, appellant's decision not to testify was not critical.

■ This court may affirm the conviction if it finds the evidence of guilt sufficiently strong. *State v. Crain*, 306 N.W.2d 891, 892 (Minn.1981). The record provides ample evidence that appellant was under the influence and had a blood alcohol concentration of .10 or more (a blood test two hours after the accident showed a blood alcohol concentration of .20). Furthermore, the record contains appellant's assertion that a red Mustang turned in front of him thus causing the accident. The other witnesses at the scene, conversely, heard no sounds of evasive action or braking. Further, examination of the accident site disclosed no evidence of braking or other evasive action. Deputy Hurd gave the opinion that the accident occurred as a result of appellant's inattentive driving. Appellant's expert conceded that Hurd's opinion was consistent with the physical evidence at the scene. The jury had both theories of the case before it and the evidence of guilt appears to be strong. We, therefore, conclude that appellant's conviction should be affirmed.

## II.

■ Appellant finally challenges the trial court's exclusion of testimony that the victim was not wearing his seatbelt at the time of the accident. A trial court has broad discretion to exclude evidence on the basis of relevancy. *State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1980), *cert. denied* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). The trial court explained its decision to exclude the testimony as follows:

[T]he reason we're in chambers is I had indicated to [appellant's counsel] yesterday that I was not going to allow into evidence either that the decedent had failed to wear a seatbelt because I did not feel it was relevant, or the decedent was either intoxicated or under the influence of alcohol.

The record should reflect that I impartly [sic] relied on *State v. Iten*, 401 N.W.2d 127, decided February 24, 1987, specifically Page 129, where the court, speaking through Judge Nierengarten of the Court of Appeals said:

"Even if a seatbelt would have prevented Quarnstrom's death, any negligence on her part is relevant only if it constituted a superseding intervening cause of the accident."

And they quote *State v. Ewing*, [250 Minn. 436, 444–45,] 84 N.W.2d 904, 911 [ (Minn.1957) ].

In *Iten*, the court rejected the argument that the victim's failure to wear a seatbelt was relevant to proximate cause. *Iten*, 401 N.W.2d at 129. The court further stated:

Even if a seatbelt would have prevented [the victim's] death, any negligence on her part is relevant only if it constituted a superseding intervening *cause of the accident.*

*Id.* (emphasis added). We find the *Iten* rationale compelling.

Here the court ruled that it found the evidence of the victim's failure to wear a

seatbelt was not relevant because the failure did not constitute a superseding intervening cause of the accident. Obviously, the victim was negligent by not wearing his seatbelt, but contributory negligence is not a defense. *State v. Crace*, 289 N.W.2d 54, 59 (Minn.1979). At trial, appellant's counsel conceded that Dr. Susan Roe, the forensic pathologist and medical examiner, would present no evidence to show that failure to wear a seatbelt constituted a superseding intervening cause of Cunningham's death.

We find no merit to appellant's argument that the failure to wear a seatbelt, a criminal offense under Minn.Stat. section 169.-686 (1988), broke the causal chain and therefore was relevant testimony. In *State v. Wickstrom*, 405 N.W.2d 1, 6 (Minn. App.1987), *pet. for rev. denied* (Minn. June 30, 1987), negligent failure to monitor a fetal heart rate from the time of the mother's examination in the emergency room did not constitute a superseding intervening cause of the child's subsequent death. The court reasoned that gross negligence was necessary to constitute such a superseding cause.

Appellant could not produce evidence that demonstrated the victim's failure to wear a seatbelt broke the causal chain. On the record here, the trial court did not abuse its discretion by excluding the testimony.

## DECISION

Although the trial court should have expressed on the record that it exercised its discretion in ruling a prior conviction admissible, the evidence of guilt is strong and therefore reversal is not necessary. The trial court did not err by excluding testimony that the victim was not wearing a seatbelt.

Affirmed.