**STATE of Minnesota, Respondent,**

v.

**Michael Daniel VANHOUSE, Appellant.**

No. C8–01–66.

Court of Appeals of Minnesota.

Oct. 16, 2001.

Mike Hatch, Minnesota Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, and Timothy R. Faver, Bemidji (for respondent).

John M. Stuart, State Public Defender, Mark F. Anderson, Assistant State Public Defender, Minneapolis (for appellant).

Considered and decided by
TOUSSAINT, Chief Judge, RANDALL, Judge, and HANSON, Judge.

## OPINION

HANSON, Judge

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that the district court abused its discretion by ruling that the state could impeach him with his 1984 conviction of second-degree criminal sexual conduct. Because the district court did not abuse its discretion in admitting the conviction, and there is no reasonable possibility that the evidence would have affected the verdict, we affirm.

## FACTS

Appellant Michael Vanhouse regularly provided day care to A.C. and M.C., who were in the fourth and fifth grades, at his trailer in Bemidji. On September 3, 1999, their mother made arrangements for Vanhouse to also care for ten-year old T.L., her niece, and seven-year old K.L., her nephew, who were visiting. After Vanhouse's wife left for work and A.C. and M.C. left for school, T.L. and K.L. were left alone with Vanhouse and his pre-school-age daughter and son.

When T.L. and K.L.'s aunt picked them up, T.L. reported that Vanhouse had taken her in his bedroom, performed cunnilingus on her and exposed her to an adult video that was playing on his VCR. During the ensuing police investigation, T.L.'s cousins, A.C. and M.C., also reported that Vanhouse had performed cunnilingus on them during the summer of 1999.

Vanhouse was charged with two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. The charges involving A.C. and M.C. were severed for trial purposes, but in the trial involving T.L., the state was permitted to introduce as *Spreigl* evidence

the testimony of A.C. regarding the conduct of Vanhouse with her and her sister.

Prior to trial, Vanhouse indicated an intent to testify and made a motion in limine to preclude the state from impeaching his testimony by evidence of a 1984 conviction of second-degree criminal sexual conduct. The matter was thoroughly briefed and argued and the district court announced the decision to allow use of the conviction for impeachment purposes.

Vanhouse nevertheless testified in his own defense and denied all charges. Given the district court's pretrial order allowing impeachment by the 1984 conviction, Vanhouse introduced evidence of that conviction in his direct examination. He was simply asked by his counsel whether he was "convicted of criminal sexual conduct in the second-degree in Aitkin County on July 20, 1984." He reported that he was, based upon his plea of guilty. He then explained that this occurred several years ago, while he was abusing drugs, and that he had now been sober for 16 years. None of the facts involved in that conviction were described. Vanhouse was not cross-examined concerning the conviction and the district court later denied the prosecution's request to place a certified copy of the 1984 conviction in evidence.

At trial, T.L. testified to the events of September 3, 1999, and the jury saw her videotaped police interview. K.L. testified that he witnessed Vanhouse taking T.L. into the bedroom. The jury was shown a segment of a pornographic video seized from Vanhouse's bedroom that depicted the scenes that T.L. had described.

After submitting the case to the jury for deliberations, the jury returned with the following questions: (1) what behavior constitutes second-degree criminal sexual conduct? (2) does such an act involve a minor? and (3) what was the nature of Vanhouse's conviction in 1984? The court replied that it could not answer the questions and that the jury could consider only evidence admitted at trial.

The jury convicted Vanhouse of first-degree criminal sexual conduct. He appeals.

## ISSUE

Did the district court err in ruling that the state could use the 1984 conviction of criminal sexual conduct in the second-degree for impeachment?

## ANALYSIS

■ The only issue raised by Vanhouse in this appeal is the propriety of permitting impeachment use of the 1984 conviction. We review a district court's ruling on the impeachment of a witness by prior conviction under an abuse of discretion standard. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn.1998).

### I

Vanhouse argues his 1984 conviction for second-degree criminal sexual conduct is stale, does not involve dishonesty or false statements and is more prejudicial than probative.

■ The district court made its decision to admit Vanhouse's prior conviction under the heightened probative value—prejudice standard. Minn. R. Evid. 609(b). Under that standard, a conviction that is more than ten years old is not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction * * * substantially outweighs its prejudicial effect." In determining whether the probative value of admitting the evidence outweighs its prejudicial effect, the district court was required to evaluate five factors:

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime * * *, (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Ihnot,* 575 N.W.2d at 586 (quoting *State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978)).

■ Our review of the district court's evaluation of the *Jones* factors is impeded by the district court's failure to enter its analysis on the record. While Minn. R. Evid. 609(b) and relevant comments (concerning convictions that are more than ten years old) are silent regarding whether the failure to enter this analysis on the record is error, the committee comment to Minn. R. Evid. 609(a) (concerning all other convictions) is instructive: "The trial judge should make explicit findings on the record as to the factors considered and the reasons for admitting or excluding the evidence." It follows that the district judge should make similar record findings when admitting a conviction under Rule 609(b), given that the standard for admitting such impeachment evidence is stricter than that under Rule 609(a). We conclude, therefore, that the district court erred by failing to place its *Jones*-factor analysis on the record.

■ But when we have applied the harmless-error analysis to cases in which the district court failed to enter the *Jones*-factor analysis on the record, we have held that the error is harmless if the conviction could have been admitted after a proper application of the *Jones*-factor analysis. *State v. Lund,* 474 N.W.2d 169, 172 (Minn. App.1991). This approach is particularly appropriate where, as here, the *Jones* factors were thoroughly briefed and orally argued before the district court. *See e.g. United States v. Holmes,* 822 F.2d 802, 805 (8th Cir.1987) (upholding admission, under the comparable federal rule, of a conviction more than 10 years old, where the matter was briefed and orally argued). Based on consideration of the *Jones* factors discussed below, we conclude that the district court did not abuse its discretion in allowing use of the conviction for impeachment.

*Impeachment Value*

■ Vanhouse argues that criminal sexual conduct is not a crime of dishonesty and therefore his prior conviction has little impeachment value. A crime need not be one of dishonesty, however, to have probative value in allowing the jury to assess a witness's credibility. *State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979) ("Lack of trustworthiness may be evinced by his abiding and repeated contempt for laws which he is legally and morally bound to obey * * *." (quotations omitted)). Moreover, the impeachment of a criminal defendant by his past conviction allows the jury to "see the whole person and thus to judge better the truth of his testimony." *Id.* (quotation omitted). In fact, the supreme court has specifically ruled that "evidence of past criminal misconduct involving children [a 1984 conviction for third-degree criminal sexual conduct] could have been of assistance to the jury in weighing the credibility of the defendant." *See Ihnot,* 575 N.W.2d at 586. Accordingly, we conclude that the district court could properly determine that Vanhouse's previous conviction for second-degree criminal sexual conduct has impeachment value.

*Date of Conviction*

■ Vanhouse argues that the conviction was inadmissible because it was stale. We examine the date of the conviction and the defendant's subsequent history to determine whether the prior offense has lost its relevance over the passage of time. *State v. Bettin,* 295 N.W.2d 542, 546 (Minn.

1980). In this case, Vanhouse's post–1985 criminal record includes two driving after revocation offenses and a misdemeanor theft. The district court could reasonable conclude that this continuing misconduct somewhat prolongs the probative value of an otherwise stale conviction.

### Similarity of Prior Conviction

Vanhouse argues that the similarity alone between the two crimes is prejudicial. It is true that a danger exists, in allowing impeachment by prior conviction of a similar offense, that the jury will convict the defendant based on the prior conviction regardless of the weight of the evidence in the pending offense. Despite this danger, Minnesota courts have allowed impeachment by prior conviction of similar crimes. See Ihnot, 575 N.W.2d at 588 (finding no abuse of discretion in admitting a third-degree criminal sexual conduct conviction for impeachment in a trial for first-degree criminal sexual conduct); State v. Frank, 364 N.W.2d 398, 399 (Minn.1985) (affirming decision to allow impeachment by two prior rape convictions in trial for first-degree criminal sexual conduct). Moreover, any prejudicial effect of the 1984 conviction was minimal here because the facts underlying the conviction were not put in evidence and the district court did not admit the certified copy of the conviction. As a result, the only evidence of the conviction was Vanhouse's own testimony, in which he was able to attempt to explain away its relevance. Finally, the district court gave the following cautionary instruction:

> The evidence you heard concerning a prior conviction of the defendant was admitted only for your consideration in deciding whether the defendant is telling the truth in this case. You must not consider this conviction as evidence of the defendant's character or conduct except as you may think it reflects on believability.

Under these circumstances, the district court could reasonably conclude that the similarity between Vanhouse's prior conviction and the charged crime was not unduly prejudicial.

### Importance of Defendant's Testimony

Vanhouse made it clear that he intended to testify no matter what the outcome of his motion in limine. The district court, therefore, was not required to give substantial weight to this factor.

### Centrality of Credibility Issue

Finally, Vanhouse argues that the jury did not need to hear the impeachment evidence to make a determination about his credibility because the jury would have readily inferred his self-interest in an acquittal without it. While it is true that the jury would have heard his testimony with a critical ear irrespective of the impeachment evidence, this fact alone is insufficient to render his credibility a remote issue. A defendant's credibility is central "if the issue for the jury narrows to a choice between defendant's credibility and that of one other person * * *." Bettin, 295 N.W.2d at 546. Where credibility is a central issue, "then a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater." Id. Ultimately, the only witnesses to the alleged incident were T.L. and Vanhouse. The district court could reasonably conclude that the credibility issue was central in this case and the impeachment evidence was therefore necessary.

Accordingly, we conclude that the district court did not abuse its discretion by ruling that Vanhouse could be impeached by the 1984 conviction.

## II

Even if the district court had abused its discretion by ruling that the conviction could be used for impeachment, that would not end our analysis. Respondent argues alternatively that any error in admitting the conviction was harmless. An error is harmless when there is no reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994).

We conclude that the evidence concerning the 1984 conviction did not significantly affect the verdict because (1) the state presented strong evidence of guilt; (2) the district court narrowly restricted the scope of the evidence concerning the 1984 conviction, allowing Vanhouse to mitigate its impact; (3) the district court gave cautionary jury instructions regarding the proper use of impeachment evidence; and (4) the 1984 conviction was essentially cumulative of the more damaging *Spreigl* evidence which is not challenged here. *See State v. Walsh*, 495 N.W.2d 602, 606 (Minn.1993) (finding harmless error in prejudicial admission of 15–year–old conviction where there was high likelihood of conviction without that evidence). We interpret the jury's questions about the 1984 conviction to be a response to the minimal nature of the evidence allowed by the district court, not to reflect an inclination by the jury to misuse it as character evidence. A cautionary instruction "adequately protects [a] defendant against the possibility that the jury would convict him on the basis of his character rather than his guilt." *Brouillette*, 286 N.W.2d at 708.

## DECISION

Although the district court committed error by not placing its analysis of the probative value-prejudice factors on the record, our review of the record confirms that the district court did not abuse its discretion when it ruled that it would allow impeachment by the prior conviction. In addition, we conclude that there is no reasonable possibility that the evidence of the prior conviction had a significant affect on the verdict.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. I would reverse Vanhouse's conviction based on the admission of the prior conviction. Vanhouse was on trial for first-degree criminal sexual conduct for acts he was accused of committing in 1999. At trial, the district court ruled that appellant could be impeached with a 1984 second-degree criminal sexual conduct conviction. I find that the evidence was stale, of little or no probative value, and highly prejudicial to a fault. Appellant's jury confirmed that.

After submitting the case to the jury for deliberations, the jury returned with the following questions: What behavior constitutes second-degree criminal sexual conduct? Does such an act involve a minor? What was the nature of Van House's conviction in 1984? The court replied that it could not answer the questions and that the jury could consider only evidence at trial.

First, by law, the 1984 conviction was stale. Evidence of prior convictions may be admissible to impeach if the underlying offenses *are less than ten years old*, punishable by imprisonment in excess of one year, and the "court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a).

Fourteen years had passed between the prior conviction and the date of the acts involved in the current conviction. This lengthy time period between incidents

makes the relevancy of the evidence tenuous at best. To guard against the danger of juries convicting criminal defendants of crimes based on the prejudicial effect of alleged prior misconduct, we have established reasonable time limit safeguards for impeachment of past crimes. *See* Minn. R. Evid. 609(b) (establishing ten-year time limit for admission of prior convictions for impeachment purposes). The assumption on which the ten-year limit is based is "that after such an extended period of time the conviction has lost its probative value on the issue of credibility." *Id.* 1989 advisory comm. cmt.

That should have put the district court on guard and cautioned it to look at the next criteria, was the prior conviction one of dishonesty or just some generic felony. If the prior conviction involved dishonesty or false statement, it is admissible regardless of the punishment or probative value-prejudicial effect determination. Minn. R. Evid. 609(a)(2). Second-degree criminal sexual conduct is, by definition, not a crime of dishonesty and, thus, the district court was required to move on to the next criteria, "probative versus prejudicial."

To determine whether the probative value outweighs the prejudicial effect, the court should consider:

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978).

The length of time between the two incidents, 14 years, immediately red flags the issue of relevancy versus prejudice.

What does something that happened 14 years ago have to do with what is charged today, other than to show that the accused actor today acted in conformity with something he did before? That is forbidden by the law. It has been settled law for decades that it is impermissible to introduce prior conduct to show conformity now on the pending charge.

Evidence of a prior crime may be used to show an element of the current crime such as motive, identity and intent. *State v. Profit*, 591 N.W.2d 451, 461 (Minn.1999). But *it is impermissible to use such evidence as propensity evidence* because it creates an undue prejudicial effect that the jury will convict appellant based on his prior bad acts. *Old Chief v. United States*, 519 U.S. 172, 180–82, 117 S.Ct. 644, 650–51, 136 L.Ed.2d 574 (1997) (holding evidence of prior bad acts transforms those acts into bad character, "raising the odds" that defendant did charged act "or, worse," promotes "preventive conviction" regardless of guilt for alleged propensity to commit bad acts and noting "risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance" (quotation omitted)); *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948) (holding evidence of prior bad acts "overpersuade[s]" jury to prejudge and deny defendant fair opportunity to defend against charged offense and noting courts exclude such evidence to "prevent confusion of issues, unfair surprise and undue prejudice"); *State v. Townsend*, 546 N.W.2d 292, 296 (Minn. 1996) (holding prolonged description of prior-crimes evidence irrelevant and only improperly "inflame[d] the jury"); *State v. DeWald*, 464 N.W.2d 500, 504 (Minn.1991) (noting preventing "conviction based on

prejudice created by evidence of other crimes is the underlying purpose" for excluding such evidence).

Then, the district court disregarded the third *Jones* factor, the similarity of the crimes. Simply because appellate courts have previously allowed impeachment by conviction of similar crimes does not mean that the exception swallows the rule. *See State v. Ihnot,* 575 N.W.2d 581, 588 (Minn. 1998) (finding no abuse of discretion in admitting a third-degree criminal sexual conduct conviction for impeachment in a trial for first-degree criminal sexual conduct); *State v. Frank,* 364 N.W.2d 398, 399 (Minn.1985) (affirming decision to allow impeachment by two prior rape convictions in trial for first-degree criminal sexual conduct). Having acknowledged those cases, the third of the five Jones factors still cannot be ignored because of the above-stated danger that juries will use the prior convictions to assume that the defendant today acted in conformity with something wrong that he did before.[1]

After examining the five *Jones* factors, it is clear to me that the evidence of the 1984 conviction was far more prejudicial than probative. I do not need to analyze the fabled judicial myth "harmless error." Appellant's jury tapped the judicial system on the shoulder and said, "Hey, it wasn't harmless error, it was the whole case!"

The jury did not come back and ask the judge about how to consider impeachment evidence as it affects credibility. Instead, they wanted to know what 1984 behavior led to a charge of second-degree criminal sexual conduct; they wanted to know did that 1984 conviction involve a minor, as, of course, the present charge does; and then they wanted even more information about appellant's 1984 conviction. The district court gave the jury the "non-answer," stating it could not answer the questions, and the jury was instructed to consider only evidence admitted at trial. The jury, of course, knew that evidence of the 1984 conviction had been admitted at trial and made the common sense assumption that, therefore, they could use it for whatever purpose they wanted, including the rationale that "if he did it before, it sure helps to prove (substantively) that he did it today."

It is not often that a jury in a criminal case will come back into court and fill in the record as to whether the claimed error was "harmless" or not. Here, appellant's jury did just that.

I dissent and would reverse the conviction and remand the case for a new trial without the admissibility of the 1984 prior conviction.

1. The prosecution is only allowed to introduce bad-character evidence if the defendant opens the door, which appellant did not, and the state makes no claim that he did. Thus, when the door is not opened by the defendant, the prosecution is forbidden to introduce bad-character evidence to show that if defendant did something wrong in the past, he is likely to have done it now (in the crime charged).