*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1532**

State of Minnesota,
Respondent,

vs.

Nathan Charles Robert Schwartz,
Appellant.

**Filed October 24, 2016
Affirmed
Rodenberg, Judge**

Meeker County District Court
File No. 47-CR-13-313

Lori Swanson, Attorney General, Karen B. McGillic, Assistant Attorney General, St. Paul, Minnesota; and

Brandi Scheifelbein, Meeker County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that the district court abused its discretion by (1) admitting *Spreigl* evidence;

(2) failing to apply the *Jones* factors in its ruling that appellant could be impeached with prior convictions; and (3) denying his request for a downward durational departure from the Minnesota Sentencing Guidelines. We affirm.

**FACTS**

In April 2013, 13-year-old O.C. reported that appellant Nathan Charles Robert Schwartz, her adult relative, had sexually abused her. O.C. was interviewed about the abuse, and a recording and transcript of the interview were later admitted into evidence at trial. During the interview, O.C. told investigators that the abuse had occurred when appellant knocked on her bedroom window and then entered the house. She detailed appellant's sexual contact with her in her bedroom. O.C. also told investigators that, three weeks earlier, appellant had asked O.C. to clean his room while O.C. was not wearing a shirt. At the time of the contacts with O.C., appellant had been ordered by a court to have no contact with her and was excluded from her residence.

Appellant was charged with first- and second-degree criminal sexual conduct. Before trial, the state notified appellant that it intended to introduce evidence of prior bad conduct and convictions under Minn. R. of Evid. 404(b). The state sought to introduce evidence that appellant (1) was adjudicated a juvenile delinquent in 2003 for second-degree criminal sexual conduct with a five-year-old relative, E.; (2) was convicted in 2014 of second-degree criminal sexual conduct against O.C., 5 counts of use of a minor in a sexual performance or pornographic work, and 15 counts of possession of child pornography; and (3) had sexually abused four juvenile female relatives in 2009, unaccompanied by any conviction or adjudication of guilt.

2

The district court determined that the facts underlying the 2003 adjudication, the 2014 conviction for second-degree criminal sexual conduct, and the 2014 convictions for use of a minor in a sexual performance were admissible to show a common scheme or plan and to rebut the defense that O.C. fabricated her allegations of sexual abuse. The district court noted that the evidence was "not so prejudicial as [to] exclude it," because credibility would be an integral part of the jury's decision. The district court determined that the 2014 convictions for use of a minor in a sexual performance were admissible as relationship evidence. It excluded evidence of the 2009 sexual-abuse bad acts and the convictions for possession of child pornography.

The state also informed appellant that, if he testified, it would seek to impeach him with 23 of his prior convictions. The district court determined that eight of the convictions would be admissible for impeachment purposes: a 2014 second-degree criminal sexual conduct conviction, five 2014 use-of-a-minor-in-a-sexual-performance convictions, and two 2014 gun-possession convictions. The district court prohibited impeachment of appellant with the 15 possession-of-child-pornography convictions, indicating that their probative value was not sufficient to overcome their prejudicial effect.

A three-day jury trial was held in 2015. Appellant did not testify. The state entered into evidence a transcript from appellant's 2003 juvenile delinquency adjudication hearing in which appellant admitted having sexual contact with a child, E. The state also offered and the district court received a portion of the district court's findings of fact from the 2014 convictions for criminal sexual conduct and use of a minor

in a sexual performance. A cautionary instruction was given to the jury concerning the transcript and findings of fact.

O.C. testified that appellant had sexual contact with her in April 2013. O.C.'s initial interview from April 2013 was played to the jury, and the transcript of the video was provided to the jury. Appellant objected to admission of the video and transcript into evidence without having some of O.C.'s statements regarding appellant's history redacted, but the district court admitted the evidence and gave a cautionary instruction to the jury before playing the video. Before deliberations, the jury received an additional cautionary instruction on the use of the prior convictions. The jury found appellant guilty of both counts.

At sentencing, appellant moved the district court for a downward durational departure from the Minnesota Sentencing Guidelines based on his age, immaturity, and background. He argued that his criminal-history score exaggerated the presumptive sentence duration that would otherwise correspond to his conduct. The district court ordered the presumptive sentence of 360 months in prison, followed by lifetime conditional release on the first-degree criminal-sexual-conduct conviction. This appeal followed.

**D E C I S I O N**

**I.**

Appellant argues that the district court abused its discretion by admitting prejudicial evidence of his prior convictions and bad conduct. He specifically challenges the evidence of the 2003 juvenile-delinquency proceeding and the findings of fact from

4

the 2014 convictions. "We review a trial court's decision to admit evidence of other crimes, wrongs, or acts for an abuse of discretion." *State v. Welle*, 870 N.W.2d 360, 365 (Minn. 2015). To prevail, appellant must show that the district court erred and that the error was prejudicial. *State v. Rossberg*, 851 N.W.2d 609, 615 (Minn. 2014). The erroneous admission of evidence of other crimes, wrongs, or acts is harmless unless it substantially influenced the verdict. *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015).

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). Evidence of other crimes or bad acts is commonly known as "*Spreigl* evidence." *Campbell*, 861 N.W.2d at 102 (citing *State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965)). It is improper to use this evidence to suggest "that the defendant has a propensity to commit the crime or that the defendant is a proper candidate for punishment for his or her past acts." *State v. Fardan*, 773 N.W.2d 303, 315 (Minn. 2009) (quotation omitted). But it "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). Evidence of other crimes, wrongs, or acts may be admitted in a criminal prosecution only if

> (1) the prosecutor gives notice of its intent to admit the evidence . . . ; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value

of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

*Id.*; *Campbell*, 861 N.W.2d at 102.

Appellant challenges the admission of the evidence under the fifth factor of rule 404(b), arguing that the evidence presented at trial was unduly prejudicial. Specifically, he contends that the rule 404(b) evidence was unfairly prejudicial because it "created the potential for the jury to become distracted from the sole question of whether the charged offense occurred." In determining whether the probative value of evidence admitted under rule 404(b) outweighs its potential for unfair prejudice, we balance the relevance of the evidence and "the State's need to strengthen weak or inadequate proof" against the risk that the evidence will be used as propensity evidence. *Fardan*, 773 N.W.2d at 319.

Here, the probative value of the admitted rule 404(b) evidence was relatively high. The district court determined that the prior convictions and adjudication established a common scheme or plan of sexual misconduct toward minor relatives within the family home. The common-scheme-or-plan exception to rule 404(b) permits the admission of "evidence of offenses which, because of their marked similarity in modus operandi to the charged offense, tend to corroborate evidence of the latter." *State v. Ness*, 707 N.W.2d 676, 687-88 (Minn. 2006) (quotation omitted). Evidence of a common scheme or plan is relevant "in the specific context of rape and sex abuse prosecutions, particularly child sex abuse prosecutions." *State v. Wermerskirchen*, 497 N.W.2d 235, 240 (Minn. 1993). "[T]he closer the relationship between the other acts and the charged offense, in terms of time, place, or modus operandi, the greater the relevance and probative value . . . and the

6

lesser the likelihood that the evidence will be used for an improper purpose." *Ness*, 707 N.W.2d at 688. The facts described in the juvenile delinquency hearing transcript from 2003 and the findings of fact from the 2014 convictions demonstrate a repeating pattern of very similar conduct involving appellant and juvenile females, with some abuse spanning from 2007-2012 and occurring within the family home, close in both time and place to the charged offense. The evidence was relevant to the state's case that in April 2013, appellant had sexual contact with O.C. in the family home.

The probative value of common-scheme-or-plan evidence is also enhanced when the defendant alleges that the victim is fabricating the conduct on which the charge is founded. *State v. Clark*, 738 N.W.2d 316, 346 (Minn. 2007); *Ness*, 707 N.W.2d at 688; *Wermerskirchen*, 497 N.W.2d at 242. Appellant's primary defense at trial was that O.C. was untrustworthy and that she had fabricated the abuse. Testimony to this effect was presented in appellant's case-in-chief, and fabrication by O.C. was argued by appellant's counsel. The evidence of the prior crimes and bad acts appropriately countered the allegation of fabrication, and was probative in light of the state's legitimate need to corroborate O.C.'s testimony.

We next consider whether the evidence should have been excluded because the danger of unfair prejudice outweighed the probative value of the evidence. *Ture v. State*, 681 N.W.2d 9, 16 (Minn. 2004). "When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn.

2006) (quotation omitted). The supreme court has stated that evidence admitted under the common-scheme-or-plan exception poses a "particular risk" of causing unfair prejudice. *Ness*, 707 N.W.2d at 687.

Appellant argues that the "sheer volume and content" of the evidence made it unduly prejudicial. However, the district court limited the rule 404(b) evidence to the evidence of the delinquency adjudication[1] and of a portion of the findings of fact supporting the criminal-sexual-conduct conviction, and one of the convictions for use of a minor in a sexual performance. The district court also limited the evidence it allowed the state to admit to only those acts that tended to demonstrate a common scheme or plan. The district court sustained appellant's objection to evidence that appellant had been involved in sexual acts with four juvenile female relatives in 2009 and that he had 15 convictions for possession of child pornography. Although the admitted evidence was damaging to appellant's case, we are not convinced that the district court abused its discretion in admitting evidence that persuaded the jury by illegitimate means or gave the state an unfair advantage. *See Bell*, 719 N.W.2d at 641.

---

[1] Appellant argues that the use of the 2003 juvenile-delinquency adjudication transcript was especially prejudicial because appellant was a minor. Appellant did not argue in the district court, and does not argue on appeal, that the use of the hearing transcript was itself improper under Minn. Stat. § 260B.245, subd. 1 (2014), for having included "evidence given by the child in the juvenile court" and therefore "not . . . admissible as evidence against the child in any case or proceeding in any other court." Because the issue was not raised below or on appeal, we do not address it. However, we note that Minn. Stat. § 260B.245, subd. 1, applies only to the manner of presentation of the evidence in a later proceeding, and not to the admissibility of the underlying facts under rule 404(b).

We also observe that the potential for unfair prejudice was reduced by the district court's three limiting instructions about the permissible uses of the prior crime and bad-acts evidence. We presume that jurors follow a judge's instructions. *Fardan*, 773 N.W.2d at 320; *see State v. Kennedy,* 585 N.W.2d 385, 392 (Minn. 1998) (reasoning that cautionary instructions concerning *Spreigl* evidence lessened the probability of undue prejudice).

Finally, although there may have been some minor duplication of bad-acts evidence within the video of O.C.'s initial interview and E.'s testimony, any erroneous admission of cumulative evidence was harmless in light of the other evidence of appellant's guilt. *Campbell*, 861 N.W.2d at 103 (holding that cumulative evidence was harmless when evidence of the defendant's guilt was overwhelming).

**II.**

Appellant next argues that the district court erred when it failed to expressly make findings concerning the *Jones* factors when it ruled that the state could impeach him with eight prior felony convictions if he chose to testify at trial. Appellant's main objection relates to the similarity between the charged offense and the prior criminal-sexual-conduct conviction and five convictions for use of a minor in a sexual performance or pornographic work.

The state may impeach a defendant testifying in his own defense with evidence of a prior felony conviction if (1) no more than ten years have elapsed since the date of conviction or since the witness was released from confinement for that conviction, and (2) the district court determines that the probative value of admitting the evidence of

9

conviction outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1), (b); *State v. Zornes*, 831 N.W.2d 609, 626-27 (Minn. 2013). "A district court's ruling on the admissibility of prior convictions for impeachment of a defendant is reviewed under a clear abuse of discretion standard." *State v. Swanson*, 707 N.W.2d 645, 654 (Minn. 2006).

"Five factors guide the exercise of a district court's discretion under Rule 609(a)." *State v. Hill*, 801 N.W.2d 646, 653 (Minn. 2011) (citing *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978)). These factors are:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Jones*, 271 N.W.2d at 538. A district court errs by failing to place its analysis of the *Jones* factors on the record. *State v. Vanhouse*, 634 N.W.2d 715, 719 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001). But, a district court's failure to consider the *Jones* factors on the record is harmless error so long as this court's review of the factors establishes that the convictions are admissible for impeachment purposes. *Swanson*, 707 N.W.2d at 655.

Here, the district court did not make a complete record of its analysis of the *Jones* factors. Instead, the district court articulated that the felony convictions would be admissible if they occurred with ten years and if the probative value outweighed the prejudicial effect. The district court then ruled that the 15 convictions for possession of child pornography did not meet that standard because the probative value of those

10

convictions was not sufficient to overcome the prejudicial effect. We therefore examine and consider the *Jones* factors as they relate to the convictions determined by the district court to be admissible for impeachment:[2]

### A.     *The impeachment value of the prior crime*

Prior convictions derive their impeachment value from their tendency to assist the jury in seeing the "whole person" who is testifying and in evaluating his or her testimony for truthfulness. *Swanson*, 707 N.W.2d at 655 (quoting *State v. Gassler*, 505 N.W.2d 62, 67 (Minn. 1993)). "[T]he mere fact that a witness is a convicted felon holds impeachment value." *Hill*, 801 N.W.2d at 652. Consequently, appellant's prior convictions have impeachment value and this factor favors admissibility.

### B.     *The date of conviction and a defendant's subsequent history*

Courts review the date of a conviction and a defendant's subsequent history in order to determine whether a prior conviction has lost relevance over time. *Vanhouse*, 634 N.W.2d at 719. However, "[c]onvictions that have occurred within the ten-year period are presumptively not stale." *State v. Williams*, 757 N.W.2d 504, 509 (Minn. App. 2008), *aff'd*, 771 N.W.2d 514 (Minn. 2009). Appellant's eight convictions were within the ten-year time period allowed by Minn. R. Evid. 609(b). The offenses occurred close in time to the charged offenses. The convictions are therefore relevant. This factor favors admissibility.

---

[2] The district court ruled that 15 additional convictions were inadmissible for impeachment, and we do not consider those convictions in our analysis.

*C.*       *The similarity of the past crime to the crime charged*

Appellant argues that no impeachment should have been allowed because the charged conduct and the victim were the same or similar to the prior convictions. "The more similar the alleged offense and the crime underlying a past conviction, the more likely it is that the conviction is more prejudicial than probative." *Swanson*, 707 N.W.2d at 655. "The danger when the past crime is similar to the charged crime is that the likelihood is increased that the jury will use the evidence substantively rather than merely for impeachment purposes." *State v. Bettin*, 295 N.W.2d 542, 546 (Minn. 1980). Nevertheless, impeachment by prior convictions of similar crimes is not necessarily erroneous. *Vanhouse*, 634 N.W.2d at 720; *see State v. Frank*, 364 N.W.2d 398, 399 (Minn. 1985) (upholding admission of prior rape convictions in first-degree criminal-sexual-conduct trial); *Bettin*, 295 N.W.2d at 546 (upholding admission of prior aggravated rape conviction in criminal-sexual-conduct trial after noting "fact that prior crime was basically the same crime with which defendant was charged" weighed against admission).

Here, there is marked similarity between the crime charged and six of the convictions the district court determined were admissible as impeachment evidence. The prior convictions and the charged crime involve the same victim and occurred in the same home. Given the similarity, this factor would normally weigh against admission because of the risk of its prejudicial effect. *See Swanson*, 707 N.W.2d at 655 (holding that greater similarity between the crimes increases the prejudice, tending to make it greater than the probative value). However, the district court determined that the facts underlying the six

12

convictions would be admitted under rule 404(b) as proof of a common scheme or plan specifically because of their marked similarity to the charged offenses. In context, the prejudice from the similarity of the prior convictions to the charged offenses is not as significant as it might otherwise have been, because in addition to its impeachment value the evidence was admissible under rule 404(b). *See State v. Moorman*, 505 N.W.2d 593, 604 (Minn. 1993) (noting "appellant was probably not hurt by the introduction of his prior conviction [for impeachment] . . . because the assault upon which his conviction was based eventually came in as *Spreigl* evidence").

Appellant's two gun convictions share no similarity with the crimes with which appellant was charged.

We conclude that this factor weighs only slightly against admission.

**D.** *The importance of defendant's testimony*[3]

"A defendant has a constitutional right to present his version of events to a jury." *Zornes*, 831 N.W.2d at 628. But a defendant's decision to not testify due to the threat of impeachment is "not critical" if "his theory of the case was presented to the jury by . . . other means." *State v. Lund*, 474 N.W.2d 169, 173 (Minn. App. 1991). Here, appellant's theory of the case was that the victim was a troubled child who had fabricated the allegations. Appellant presented this theory through the testimony of seven witnesses who testified about the victim's lack of trustworthiness and history of harming family

---

[3] The supreme court has sometimes considered the fourth and fifth *Jones* factors together. *See Swanson*, 707 N.W.2d at 655. For the purpose of our analysis, we consider them separately.

members when angered, lessening the weight of this factor. In context, this factor does not weigh against admission.

### E. *The centrality of the credibility issue*

"[W]hen a defendant's credibility is a central issue, a greater case can be made for admitting the impeachment evidence of the prior convictions, because the need for the evidence is greater." *Zornes*, 831 N.W.2d at 628 (quotation omitted). The district court noted that the credibility of appellant and O.C. was central for the jury. Had appellant testified, his credibility would have been very important and this factor therefore weighs strongly in favor of admitting appellant's prior felony convictions.

Applying and weighing the *Jones* factors, we conclude that the district court's determination to allow admission of the eight convictions for impeachment if appellant testified was proper. Despite the district court's error in failing to expressly consider the *Jones* factors on the record, its error was harmless because, applying the *Jones* factors, the impeachment evidence was properly determined to be admissible.

### III.

Appellant argues that the district court abused its discretion by denying his motion for a downward durational departure and imposing the presumptive guideline sentence.

"The district court must order the presumptive sentence provided in the sentencing guidelines unless substantial and compelling circumstances warrant a departure." *State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011) (quotation omitted). Even where these circumstances exist, a district court is not obligated to grant a departure or to state its reasons for imposing the presumptive sentence. *State v. Bertsch*, 707 N.W.2d 660, 668

14

(Minn. 2006); *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013). The decision not to depart from a presumptive sentence is entrusted to the district court's exercise of discretion, and will not be reversed "as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *Pegel*, 795 N.W.2d at 255 (quotation omitted).

In his departure motion to the district court, appellant argued that his age, immaturity, and background justified departure. He also argued that his criminal-history score exaggerated the presumptive prison sentence that would otherwise correspond to his conduct.

The record demonstrates that the district court considered appellant's argument for a sentencing departure. At sentencing, the district court reviewed the pre-sentence investigation report, which recommended the presumptive sentence, and heard arguments on appellant's motion for a departure before stating its decision not to depart from the sentencing guidelines. The district court stated that even if it accepted appellant's argument that his criminal-history score was exaggerated and "toss[ed] out" some of his criminal-history points, the presumptive sentence under the guidelines would still be 360 months. Appellant's criminal-history score was computed at 28, well in excess of the maximum criminal-history score accounted for by the grid. The district court was not required to state its reasons for not departing from the guidelines. *See Johnson*, 831 N.W.2d at 925. Because the district court "deliberately considered circumstances . . . and

exercised its discretion," we will not interfere. *Pegel*, 795 N.W.2d at 254. The district court acted within its discretion in sentencing.

**Affirmed.**