**STATE of Minnesota, petitioner,
Appellant,**

v.

**Richard Allen IHNOT, Respondent.**

**No. C9-96-819.**

Supreme Court of Minnesota.

March 26, 1998.

---

Hubert H. Humphrey III, Atty. Gen., Robert M.A. Johnson, Anoka county Atty. by Marcy S. Crain, Asst. County Atty., for appellant.

John M. Stuart, State Public Defender by Mark F. Anderson, Asst. State Public Defender, for respondent.

## OPINION

GARDEBRING, Justice.

This case arises from the conviction of Richard Allen Ihnot, who was found guilty by a jury of four counts of first-degree criminal sexual conduct, Minn.Stat. § 609.342, subds. 1(a) and (g) (1996). Prior to trial, the state filed a motion in limine seeking to admit three of Ihnot's prior felony convictions as impeachment evidence, if Ihnot chose to testify at trial. The felony conviction at issue here is a 1984 conviction for third-degree criminal sexual conduct, for which Ihnot was sentenced to 6 months in jail and also received an 18 month stayed prison term and 6 years of probation.[1] The conviction was based upon sexual contact, including acts of sexual penetration, with a 14–year–old girl.

Defense counsel argued that the prior criminal sexual conduct conviction should not be admitted for impeachment purposes because the similarity to the crime charged made the risk of undue prejudice great. He argued further that, because of the risk of prejudice, the admission of the prior criminal sexual conduct conviction effectively prevented Ihnot from testifying in his own defense.

The trial court concluded that the prior criminal sexual conduct conviction was admissible for impeachment purposes, noting that: (1) there were differences between the past conviction and the current charge, notably, that the prior conviction was for criminal sexual conduct in the third-degree and the current charge was for criminal sexual conduct in the first-degree, and that the victims were of different ages, one being between 5 to 7 years of age at the time of the offense and the other being 14; (2) the conviction was not stale within the meaning of Minn. R. Evid. 609, because the current crime was within 10 years of Ihnot's release from probation on the previous crime; (3) credibility was a central issue in the case; and (4) the probative value of admitting the conviction outweighed the prejudice. Ihnot did not testify at the jury trial and therefore, the jury did not hear the impeachment evidence regarding the prior conviction.

The court of appeals reversed, holding that the trial court abused its discretion by ruling that Ihnot's prior criminal sexual conduct conviction would be admissible for impeachment purposes if he testified at trial. Specifically, the court of appeals held that the trial court erred in concluding that release from probation is the appropriate date from which to begin counting the 10–year period and that the trial court also failed to make a finding that the probative value of admitting the evidence *substantially* outweighed its prejudicial effect, a finding necessary under Minn. R. Evid. 609(b) if the trial court allows impeachment with a conviction that is more than 10 years old. Further, the court of appeals held that Ihnot was deprived of the right to testify in his own defense due to the

1. The state also sought to introduce two other prior convictions for impeachment purposes. They were a fifth-degree controlled substance crime, committed in 1991, and a second-degree burglary, committed in 1992. Ihnot's counsel did not challenge the admissibility of the prior controlled substance crime or the second-degree burglary.

threat of the use of the impeachment evidence, which is a right protected by both the United States and Minnesota Constitutions. We reverse.

The victim in this case was a young girl, between the ages of 5 and 7 years old at the time of the sexual abuse. The victim and her mother lived with Ihnot, the mother's boyfriend, at several different locations from 1993–1995. At trial, the victim, who was by that time 8 years old, testified that Ihnot first began abusing her when she was in kindergarten, some time in 1993, and continued to abuse her over a period of several years. She testified to several acts of molestation, including penetration, that occurred throughout this period and she linked the incidents to the various locations where she had lived with Ihnot and her mother.

In addition to the testimony of the victim, the prosecution presented testimony at trial from the victim's father and stepmother, who were the first adults to become aware of the sexual abuse; an investigator who first interviewed the child after the allegations of abuse; and a pediatric nurse practitioner and expert in the field of child physical and sexual abuse, who also conducted an interview and physical examination of the child. However, the crux of the prosecution's case depended upon the testimony of the child victim as to the specific facts and incidents of alleged abuse. Because the physical evidence was inconclusive as to whether or not the child had in fact been sexually abused, the case hinged upon the jury's determination of credibility. Ihnot did not testify in his defense and the defense presented no other evidence at trial.

Minn. R. Evid. 609, which governs impeachment by evidence of a prior criminal conviction, states in part:

(a) **General rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) **Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

This court's review of a trial court's ruling under this provision is governed by our previous determination that "[e]videntiary * * * rulings generally rest within the trial court's discretion and will not be reversed absent a clear abuse of discretion." *State v. Grayson,* 546 N.W.2d 731, 736 (Minn.1996) (citation omitted).

This case gives rise to three issues: (1) Is the 1984 criminal sexual conduct conviction stale for impeachment purposes?; (2) Does the probative value of admitting the conviction outweigh or substantially outweigh its prejudicial effect?; and (3) Does admission of the impeachment evidence infringe upon Ihnot's right to testify in his own defense?

■■ Initially, we must decide what event marks the end of the 10–year period, since that determination will dictate whether the trial court's ruling is considered under Minn. R. Evid. 609(a) or under Minn. R. Evid. 609(b), which arguably embodies a more stringent standard for admissibility.[2]

**2.** As to the beginning point for the 10–year period, we agree with the court of appeals that release from probation is not release from "the confinement imposed for [the] conviction," within the meaning of Rule 609(b). "Confinement" does not include probation, but is limited to incarceration. However, the parties also raise an additional issue: whether an intervening period of incarceration for violation of probation on

the conviction to be introduced tolls the running of the 10–year period. Several federal courts have interpreted the corresponding federal rule to mean that such periods of reconfinement operate to toll the running of the 10–year period. *See United States v. Gray,* 852 F.2d 136, 139 (4th Cir.1988); *United States v. McClintock,* 748 F.2d 1278, 1288 (9th Cir.1984); *United States v. Brewer,* 451 F.Supp. 50, 52 (E.D.Tenn.1978). In the

There are three options reflected in cases from other jurisdictions. Some courts mark the end date as the date the trial begins. Ihnot's trial began on January 23, 1996. Other courts have held that the date the witness testifies is the appropriate end of the 10–year window. In this case, Ihnot did not testify, but had he testified, presumably it would have been during January 23–26, 1996, the period of the trial. A third option is the date of the charged offense. Here, the evidence suggests that the offenses occurred over a period of years, but began some time in 1993 and ended some time in 1995. *See United States v. Thompson,* 806 F.2d 1332, 1339 (7th Cir.1986) (finding that conviction was not stale for impeachment purposes based upon the date that the defendant's trial began); *United States v. Cathey,* 591 F.2d 268, 274 (5th Cir.1979) (finding that conviction was stale for impeachment purposes based upon the date that the defendant was called to testify at trial); *United States v. Foley,* 683 F.2d 273, 277 (8th Cir.1982), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982) (finding that a conviction was stale for impeachment purposes because the defendant committed the current offense 10 years and 10 months prior to his release from confinement for the conviction sought to be introduced, however conviction properly admitted for impeachment purposes because probative value outweighed prejudicial effects).

Ihnot argues that, since the issue is the credibility of the defendant, the end date should be the date of testimony, i.e., the date on which credibility will be judged. Relying on an Eighth Circuit opinion and a dissent in a Fifth Circuit opinion, the state argues that the date of the charged offense is the appropriate end point for the 10–year period. *See Foley,* 683 F.2d at 277; *Cathey,* 591 F.2d at 277 n. 2 (Fay, J., dissenting).

While none of the alternative approaches is ideal, we share the concerns expressed by Professors Wright and Gold: "[t]he problems with [using the trial date] are that a trial date can be manipulated through dilatory tactics to permit the ten years to run and, more importantly, bestowing this significance on the date of trial is purely arbitrary and has no support in policy." 28 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure: Evidence* § 6136 (1993). We believe that using the date of the witness's testimony as the end date shares these same infirmities; that is, since it is linked to the time of trial, it is subject to manipulation and it is also unsupported by any policy justification. Furthermore, "[i]f prior convictions lose their probative value for impeachment purposes because of ten years of 'good behavior,' that is the period we should measure—the period of unquestioned good behavior." *Cathey,* 591 F.2d at 277 n. 2 (Fay, J., dissenting). For these reasons, we hold that the date of the charged offense is the appropriate end point for the 10–year period that determines whether a conviction is stale under Minn. R. Evid. 609(b).

While in this case it is somewhat difficult to pinpoint the exact dates upon which Ihnot committed the incidents that make up the currently charged offense, the testimony of the child witness was that the incidents began some time in 1993 and ended some time in 1995, which is as specific as it need be here. Using the date of the charged offense as the end date for the 10–year period, Ihnot's 1984 criminal sexual conduct conviction was not stale for impeachment purposes under Minn. R. Evid. 609(b), because only 8 years elapsed between the time he was released from confinement in 1985 for the 1984 conviction and the date of at least some of the incidents for which he was convicted in this case.

■ We note that in most criminal cases there will be no dispute about when the offense occurred, but we also recognize that, in cases such as this, where the charged criminal acts are alleged to have occurred on unspecified dates within a longer period of time, there is a risk that the prosecution

present case, the issue is not dispositive because Ihnot has not served any additional periods of incarceration beyond the initial six month jail term associated with the 1984 criminal sexual conduct conviction. However, in general, we concur with the federal courts' interpretation of the rule that periods of reconfinement for violations associated with the crime sought to be introduced would toll the running of the 10–year period.

could be deliberately vague as to the date of offense, so as to preserve the opportunity to impeach the defendant with a prior conviction. Therefore, for future cases in which no specific date of commission for the charged offense can be identified, the trial court, in performing its analysis under Minn. R. Evid. 609(b), should look to the facts before it and determine the date upon which it can reasonably conclude that the offense occurred.

Because Ihnot's conviction is not stale pursuant to Minn. R. Evid. 609(b), this court must only determine whether the trial court abused its discretion by allowing the use of the 1984 criminal sexual conduct conviction for impeachment purposes under Minn. R. Evid. 609(a). The Committee Comment to Rule 609(a) states that "[i]n cases where a conviction is not probative of truthfulness the admission of such evidence theoretically on the issue of credibility breeds prejudice," and that "[t]he potential for prejudice is greater when the accused in a criminal case is impeached by past crimes that only indirectly speak to character for truthfulness or untruthfulness." In this case, Ihnot's 1984 criminal sexual conduct conviction is not a crime which, per se, involves dishonesty or false statement and this court recognizes the potential for prejudice in allowing it to be introduced for impeachment purposes. However, as noted above, the trial court is afforded a significant amount of discretion in making the admissibility determination. In reaching that discretionary judgment, the trial court must balance the risk of prejudice and the extent of helpfulness to the jury, i.e., the probative value of the evidence.

That brings us to the next issue, whether in this case, the probative value of the 1984 conviction outweighed the risk of unfair prejudice arising from its similarity to the current crime. Both parties direct our attention to the factors set forth in *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978) as appropriate in considering whether the probative value outweighs the prejudicial effects of admitting a prior conviction for impeachment purposes. These factors are:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the

similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Jones*, 271 N.W.2d at 538. Although *Jones* was decided before Rule 609 became effective, we conclude that these factors remain suitable and we reaffirm their application in determining whether the probative value outweighs the prejudice under the rule.

Taking into account the factors enunciated in *Jones*, we conclude that the trial court did not abuse its discretion by holding that Ihnot's 1984 criminal sexual conduct conviction was more probative than prejudicial. First, this court has stated that "impeachment by prior crime aids the jury by allowing it to see the whole person and thus to judge better the truth of his testimony." *State v. Gassler*, 505 N.W.2d 62, 67 (Minn.1993) (citations omitted). Here, evidence of past criminal misconduct involving children could have been of assistance to the jury in weighing the credibility of the defendant. The first *Jones* factor is satisfied on these facts.

The second *Jones* factor is also satisfied because while Ihnot's 1984 conviction is fairly old, Ihnot's subsequent convictions for second-degree burglary and fifth-degree controlled-substance crime shows a pattern of lawlessness that indicates that "the [prior] offense had not lost any relevance by the passage of time." *State v. Bettin*, 295 N.W.2d 542, 546 (Minn.1980). We find further support for our conclusion on this issue in the reasoning of the Eighth Circuit, which held that a defendant's history of lawlessness and convictions enhances the probative value of even a stale conviction. *United States v. Holmes*, 822 F.2d 802, 804–05 (8th Cir.1987).

The third *Jones* factor is also satisfied because, while Ihnot's prior conviction and the current charge are both criminal sexual conduct crimes, the facts underlying each charge are sufficiently different to minimize any prejudicial effect of admission of the earlier conviction. We note that during sentencing, Ihnot's own defense counsel argued that the facts surrounding Ihnot's 1984 crimi-

nal sexual conduct conviction were substantially different from the current criminal sexual conduct conviction by stating that "this was a different nature of the [sic] act. Although it was a criminal sexual conduct, it involved an adolescent." Also, the trial court's decision in this case poses less of a risk than did the admission, for impeachment purposes, of two prior rape convictions in a trial for first-degree criminal sexual conduct, an evidentiary ruling that we approved in *State v. Frank*, 364 N.W.2d 398, 399 (Minn. 1985).

Because Ihnot did not make an offer of proof as to what his testimony would have been had he testified, this court is left to assume that the thrust of his testimony would have been to deny the allegations of criminal sexual conduct.[3] That being the case, the fourth and fifth *Jones* factors are also satisfied, in that, had Ihnot chosen to testify, credibility would have been the central issue in this case. On this point, we have said previously: "the general view is that if the defendant's credibility is the central issue in the case that is, if the issue for the jury narrows to a choice between defendant's credibility and that of one other person then a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater." *Bettin*, 295 N.W.2d at 546.

Based upon consideration of the *Jones* factors, we conclude that the trial court did not abuse its discretion in authorizing admission of evidence of the 1984 criminal sexual conduct conviction for impeachment purposes, because the probative value would have outweighed its prejudicial effect. However, we note that this evidence may be at the margin of admissibility for impeachment evidence for two reasons: (1) while it is not technically stale, it is an old conviction, and (2) there was certainly some inherent risk of prejudice here, given the type of crime involved. We urge trial courts to exercise great care in making the judgments called for by Rule 609.

Finally, we must consider whether the trial court's ruling, in essence, deprived Ihnot of his constitutional right to testify. The defendant's right to testify in his or her own defense is protected by both the 14th Amendment Due Process Clause of the Federal Constitution and Minnesota state law. *See* Minn.Stat. § 611.11 (1996); *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975); *State v. Rosillo*, 281 N.W.2d 877, 878 (Minn.1979). In *Gassler*, this court addressed the relationship between a ruling on impeachment evidence and the right to testify. We stated:

> Here, appellant was not kept from testifying; he made a decision not to testify based on the evidence that would have been admitted had he taken the stand. Appellant argues that the court's ruling effectively left him no choice. However, defendants often make decisions not to testify based on the potential damage that prior convictions could inflict on their credibility. The mere fact that a trial court would allow impeachment evidence if a defendant chooses to testify does not necessarily implicate his constitutional right to testify in his own defense. At a minimum, in order to prevail on this argument, appellant would have to show that the trial court abused its discretion in ruling that the probative value of the impeachment evidence outweighed its prejudicial effect; *it is only when a trial court has abused its discretion * * * that a defendant's right to testify may be infringed by the threat of impeachment evidence.*

*Id.* 505 N.W.2d at 67–68 (emphasis added). Therefore, given our conclusion that there was no abuse of discretion in the trial court's ruling, Ihnot's claim that he was unconstitutionally prevented from testifying in his own defense is without merit.

Ihnot's 1984 criminal sexual conduct conviction is not stale for impeachment purposes under Minn. R. Evid. 609(b) because Ihnot

---

**3.** It is, of course, the responsibility of the defendant to make an offer of proof as to what would have been the substance of the testimony, had it been provided. However, appellate courts do experience difficulty in evaluating the effect of any abuse of discretion in this area without knowing the substance of any possible testimony. Therefore, we suggest that trial courts may want to elicit such an offer of proof if a defendant asserts that his decision not to testify is based on the risk of undue prejudice through impeachment by prior convictions.

committed the currently charged offense only 8 years after he was released from confinement in 1985 for the 1984 criminal sexual conduct conviction. The trial court did not abuse its discretion by authorizing the admission of Ihnot's 1984 criminal sexual conduct conviction for impeachment purposes because, pursuant to the *Jones* factors, the probative value outweighed its prejudicial effects as required by Minn. R. Evid. 609(a). Because there was no abuse of discretion, Ihnot cannot assert that his right to testify in his own behalf has been infringed upon.

Reversed.

TOMLJANOVICH, Justice (dissenting).

I respectfully dissent. I do not quarrel with the majority's computation of time in concluding the 1984 conviction is not stale under Minn. R. Evid. 609(b).

However, in analyzing this under *State v. Jones*, 271 N.W.2d 534 (Minn.1978), I cannot help but conclude that evidence of the 1984 crime is far more prejudicial than probative.

It is not enough to conclude that because we can construe the time limits of Minn. R. Evid. 609(b) to include the 1984 crime, it should come in. A crime that is over 10 years old surely has limited value in assisting the jury in assessing the credibility of a witness.

The 1984 conviction should have been excluded because of its similarity to the present offense. As the prosecutor herself argued in her motion in limine to admit the 1984 conviction as "Spreigl" evidence, the crimes were somewhat similar because "both victims were young, underage females." I believe that is the same analysis a jury will make. Surely they will not draw a distinction between having sex with a 5– to 7–year–old in this case and a 14–year–old in the 1984 case. The jurors would simply conclude Ihnot is a sex offender who preys on underage girls. The trial court also suggested that the jurors would not find the crimes similar because the 1984 conviction was for criminal sexual conduct in the third degree and the present crime of criminal sexual conduct in the first degree. I don't believe jurors make such fine distinctions when using the conviction for impeachment.

Surely the jurors would have had an adequate picture of the "whole person" and would have been able to judge Mr. Ihnot's credibility taking into account the other two convictions without the more prejudicial 1984 conviction.

The fact that credibility of the complainant and the defendant was so crucial in this case should make us even more careful to assure that the jury does not have before it a crime that is so old as to have limited value in determining credibility and so similar to the charged offense as to have enormous potential for prejudice.

I would remand for a new trial.