STATE of Minnesota, Respondent,

v.

Gary JAMES, Appellant.

No. C8–01–245.

Court of Appeals of Minnesota.

Jan. 15, 2002.

Mike Hatch, Attorney General and Susan Gaertner, Ramsey County Attorney, Janice Barker, Assistant County Attorney, St. Paul, for respondent.

John M. Stuart, State Public Defender, Ann McCaughan, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, Presiding Judge, WILLIS, Judge, and G. BARRY ANDERSON, Judge.

## O P I N I O N

WILLIS, Judge.

Appellant Gary James challenges his conviction of unlawful possession of a pistol, arguing that the district court erred by (1) permitting the prosecutor's peremptory strikes of two veniremembers because the strikes were not based on race-neutral reasons, (2) sua sponte excusing a prospective juror, and (3) ruling that James could be impeached by a prior felony conviction. He also argues that circumstantial evidence did not exclude a rational hypothesis that someone else possessed the pistol and that the prosecutor committed prejudicial misconduct by alleging facts not in evidence. James raises additional issues in a pro se brief. Because we conclude that the district court did not err, the evidence was sufficient to support the jury's verdict, the prosecutor did not commit prejudicial misconduct, and the pro se brief provides no basis for relief, we affirm.

## FACTS

St. Paul police officers Troy Greene and Edward O'Donnell were dispatched to a house on a complaint that a man with a gun was outside. Upon arriving, Officer Greene saw James standing at a corner of the house, near the front door. James saw the squad car and started to walk quickly south, away from the officers and toward the rear of the house, with a small, dark item in each hand. Officer Greene left the squad car and pursued James.

James stopped abruptly at the southwest corner of the house. With his right hand concealed from the officers' view, James made a "slight dip or squat" as he reached down toward the ground. He then turned and ran back toward the front of the house and Officer Greene, who saw that James no longer had an item in his right hand. James was stopped by Officer O'Donnell, who had joined the pursuit. The officers' searches revealed a holster in James's rear pants pocket and a partially loaded semi-automatic pistol on the ground at the southwest corner of the house.

James stipulated that he is ineligible to possess a firearm because he was convicted of a crime of violence in 1996. *See* Minn.Stat. § 624.713, subd. 1(b) (2000) (providing that person convicted of crime of violence may not possess a pistol unless ten years have elapsed since restoration of civil rights or expiration of sentence or disposition). A jury found James guilty of possession of a firearm by an ineligible person. *See id.* This appeal follows.

## ISSUES

I. Did the district court err by permitting the prosecutor to exercise peremptory strikes of African–American and Native–American veniremembers?

II. Did the district court err by sua sponte dismissing a prospective juror?

III. Did the district court abuse its discretion by ruling that James could be impeached by his 1994 conviction of fifth-degree controlled-substance crime?

IV. Does circumstantial evidence support a rational hypothesis that someone other than James possessed the pistol?

**V.** Did the prosecutor commit prejudicial misconduct during closing argument by alleging facts not in evidence?

**VI.** Does James's pro se brief provide a basis for relief?

## ANALYSIS

### I.

■ James argues that the district court erred by permitting the state to exercise peremptory challenges to remove an African American and a Native American from the venire. He contends that the prosecutor's stated race-neutral reasons for the exclusions were merely a pretext for purposeful discrimination. Using peremptory challenges to exclude persons from the jury solely on the basis of race is prohibited. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986).

■ In *Batson*, the Supreme Court established a three-step process to determine whether a peremptory challenge is motivated by discriminatory intent. First, the defendant must make a prima facie showing that the challenge was exercised on the basis of race. *Id.* at 96, 106 S.Ct. at 1723. Second, when such a prima facie showing has been made, the burden shifts to the prosecutor to articulate a race-neutral reason for the challenge. *Id.* at 97, 106 S.Ct. at 1723. Finally, if the prosecutor establishes a race-neutral reason for the challenge, the district court must determine whether there has been purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1724. If the prosecutor had a discriminatory intent in striking a juror, the defendant is automatically entitled to a new trial. *State v. Greenleaf*, 591 N.W.2d 488, 500–01 (Minn.1999).

■ After James's counsel objected and argued that the state's challenge of the African–American veniremember was based on race, the prosecutor stated:

> [The veniremember] * * * had indicated that she'd been convicted in 1995 of Malicious Punishment of a child and that she felt that she was not treated fairly in her own house, all of this in light of the fact that when she talks about her abusive significant other from years past who was * * * shot in 1996— now, when she discusses him she says, "You reap what you sow." So her viewpoints of his criminal behavior [were] different than her viewpoints of how she personally was handled by the court system, which gave me grave concerns.
>
> In addition, * * * she had also been arrested as recently as February 23rd of 2000 for DWI and 3–1 of '99 for DWI. * * * I struck her because of the Malicious Punishment charge and her feelings about that prosecution. It was not based upon her race.

And after the state's challenge of the Native-American veniremember, the prosecutor stated:

> [The veniremember] had been convicted in 1990 of DWI but then again in 1998 he got another gross misdemeanor DWI * * *. He would not have completed his probationary term or shown any period of time in which the interventions as a result of that DWI have been successful. My concerns about those convictions and where he's at at this point in time in his life potentially with his chemical dependency were concerns of mine, basing my reasons for my strike on that, again, a race-neutral decision.

The district court determined that the prosecutor had satisfactorily explained her reasons for exercising the peremptory challenges.

■ Considerable deference must be given by a reviewing court to the district

court's finding on whether the prosecutor acted with discriminatory intent because that finding normally will turn largely on the district court's evaluation of credibility. *State v. DeVerney*, 592 N.W.2d 837, 844 (Minn.1999). Appellate courts generally uphold a district court's acceptance of a prosecutor's explanation if the record supports that explanation and there is no clear proof that the stated explanation was a pretext for racial discrimination. *See State v. Moore*, 438 N.W.2d 101, 107 (Minn.1989). Prior convictions and prior arrests are valid reasons for exercising peremptory challenges. *DeVerney*, 592 N.W.2d at 843; *Moore*, 438 N.W.2d at 107. The district court did not err by permitting the state to exercise peremptory challenges against the veniremembers.

## II.

James argues that the district court erred by sua sponte dismissing a prospective juror who was sleeping. After the prospective juror was accepted by defense counsel and the prosecutor, the district court recessed and expressed "serious concerns as to whether or not [the prospective juror] will be able to listen to the evidence and give a fair trial" because the prospective juror appeared "somewhat disoriented" and had been "asleep for some time" when other veniremembers were being questioned. Over defense counsel's objection, the district court excused the prospective juror.

■■ James asserts two claims. First, he contends that challenges for cause and peremptory challenges of veniremembers may only be exercised by the parties, not by the district court. *See* Minn. R.Crim. P. 26.02, subds. 5–6 (providing procedure for challenges). But here, the district court did not challenge the prospective juror; it simply excused him. The essence of James's argument, however, is that the

district court cannot remove a prospective juror after both parties have accepted the individual but before the jury has been sworn in. But the district court has the discretion to dismiss a sleeping or inattentive juror during trial. *See State v. Yant*, 376 N.W.2d 487, 491 (Minn.App.1985), *review denied* (Minn. Jan. 17, 1986). We see no reason for the district court to have discretion to remove a juror during trial, after testimony and evidence have been presented, but not to remove a prospective juror before trial. If the district court expresses legitimate concerns about a prospective juror's ability to remain awake and alert during trial and removes the individual during voir dire, potential fair-trial issues are avoided. And because the excused prospective juror must be replaced by a veniremember subject to the same jury-selection process as the excused prospective juror, issues of prejudice do not arise.

Second, James argues that additional recesses or other accommodations during trial would resolve any difficulties that the prospective juror had with staying alert. But the district court observed the prospective juror during voir dire and is in the best position to determine whether that person could remain attentive during trial, with or without accommodations.

## III.

■■ James argues that the district court erred by ruling that the state could introduce evidence of his 1994 conviction of fifth-degree controlled-substance crime to impeach his testimony. The district court's ruling on the impeachment of a witness by prior conviction is reviewed under a clear-abuse-of-discretion standard. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn. 1998).

■■ Evidence of a prior conviction may be admissible to impeach a defen-

dant's testimony if the underlying offense is less than ten years old and is punishable by imprisonment in excess of one year, and the district court "determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1). To determine whether the probative value outweighs prejudicial effect, the court should consider

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Ihnot,* 575 N.W.2d at 586 (quoting *State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978) ("Jones factors")). The district court "should demonstrate on the record that it has exercised the discretion accorded by Minn. R. Evid. 609(a)(1) after considering and balancing the [Jones] factors." *State v. Lund,* 474 N.W.2d 169, 172 (Minn.App. 1991).

 James's prior conviction was within the ten-year limit and is punishable by imprisonment in excess of one year. *See* Minn.Stat. § 152.025, subd. 3 (2000) (providing maximum five-year imprisonment for fifth-degree controlled-substance crime). But because the district court did not record its consideration of the Jones factors, we must perform that analysis. *See Lund,* 474 N.W.2d at 172 (finding Jones factors satisfied even when district court did not record consideration of factors).

### A. Impeachment Value of Prior Crime

 Convictions for possession of controlled substances do not directly relate to veracity of a defendant. *State v. Zerne-*

*chel,* 304 N.W.2d 365, 366 (Minn.1981). But impeachment by a prior conviction "aids the jury by allowing it to see the whole person and thus to judge better the truth of [the defendant's] testimony." *State v. Gassler,* 505 N.W.2d 62, 67 (Minn. 1993) (quotations omitted).

### B. Date of Conviction and Subsequent History

James's 1994 conviction is fairly recent; his subsequent 1996 conviction of criminal sexual conduct in the fourth degree and a probation violation in 1998 show "a pattern of lawlessness that indicates that the [prior] offense had not lost any relevance by the passage of time." *Ihnot,* 575 N.W.2d at 586 (quotation omitted).

### C. Similarity of Past Crime and Charged Crime

The only similarity between James's prior conviction of controlled-substance crime and his current offense of prohibited person in possession of a firearm is that he was charged with possessing something that was unlawful for him to possess. The elements and nature of the crimes are different. The greater the difference between a prior crime and the current offense, the less prejudicial the prior conviction is for impeachment purposes. *Id.* at 586–87. We note that the supreme court has upheld the admission of prior convictions for impeachment purposes in cases in which the prior crime and the current offense were more similar than the crimes involved here. *Id.* at 583, 586–87 (affirming district court's decision to allow admission of conviction of third-degree criminal sexual conduct for impeachment purposes in a trial for first-degree criminal sexual conduct); *State v. Frank,* 364 N.W.2d 398, 398–99 (Minn.1985) (affirming district court's decision to permit use of two prior rape convictions for impeachment purposes

in trial for first-degree criminal sexual conduct). The admission of James's prior conviction of controlled-substance crime did not present an impermissible risk of prejudice.

### D., E. Importance of Defendant's Testimony and Centrality of Credibility Issue

■ As James acknowledges, his testimony and credibility were essential to his defense. Considering the strength of Officer Greene's testimony and other evidence against James, "[t]he jury needed to hear why he was at [the house], and why, when searched, a holster was found in his back pocket" and also needed to hear him "deny that he ever held or had possession of the gun." If a defendant's credibility is the central issue of a case, "a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater." *Ihnot*, 575 N.W.2d at 587 (quotation omitted).

All five *Jones* factors are satisfied. The probative value of admitting James's 1994 conviction outweighed its prejudicial effect. Therefore, the district court did not abuse its discretion by allowing the state to introduce evidence of his conviction for impeachment purposes.

### IV.

■ James argues that the circumstantial evidence is insufficient to establish that he had possession of the pistol. This court will uphold a conviction based on circumstantial evidence "if the reasonable inferences drawn from the evidence are inconsistent with any rational hypothesis except that of the defendant's guilt." *State v. Gates*, 615 N.W.2d 331, 337 (Minn. 2000). A jury is in the best position to evaluate circumstantial evidence, and its verdict is entitled to deference. *State v. Morris*, 606 N.W.2d 430, 437 (Minn.2000).

When considering a sufficiency-of-circumstantial-evidence claim, this court views the evidence in the light most favorable to the verdict and assumes that the jury believed testimony that supported the verdict and disbelieved testimony that did not. *See Gates*, 615 N.W.2d at 337; *State v. Harris*, 589 N.W.2d 782, 791 (Minn.1999).

James contends that the evidence does not exclude the rational hypothesis that someone else possessed or controlled the pistol. He refers to testimony describing a 911 call, during which the caller reported that there were "a bunch of guys" outside the house and that a person in a car drove off a few minutes before the police officers arrived. James asserts that any one of those persons could have dropped the holster and pistol, pointing out that this hypothesis is consistent with his own testimony that he found a "black item" on the ground outside the house, picked it up, and put it in his pocket without knowing what it was. He also testified that he did not reach the southwest corner of the house before he was stopped by the officers.

■ We reject James's argument. The circumstantial evidence supporting the verdict forms "a complete chain that leads directly to the defendant's guilt." *See Gates*, 615 N.W.2d at 337–38 (citation omitted). Officer Greene testified that James had an item in each hand before he arrived at the southwest corner. He also testified that James no longer had an item in his right hand after he dipped or squatted toward the ground. Immediately after James was handcuffed, Officer Greene searched the southwest corner and found a pistol. Officer O'Donnell testified that he found a holster in James's pants pocket and demonstrated at trial that the pistol fits the holster. Although Officer Greene's testimony conflicted with James's testimony that he did not reach the southwest corner, we must assume that the jury be-

lieved Officer Greene and disbelieved James. *See Harris*, 589 N.W.2d at 791. Viewed in the light most favorable to the verdict, the evidence is sufficient to establish that James had possession of a pistol.

## V.

 James claims that the prosecutor committed prejudicial misconduct during closing argument by misstating the contents of the 911 call that started the events leading to James's arrest. James did not specifically object to the statements, generally object that the prosecutor was alleging facts not in evidence, or seek a cautionary instruction. Generally, a defendant waives the right to challenge a prosecutor's closing-argument comments unless the defendant objected or sought a cautionary instruction. *State v. Griese*, 565 N.W.2d 419, 427 (Minn.1997). But regardless of a defendant's failure to object, this court may reverse a conviction if the comments were "unduly prejudicial." *State v. Whittaker*, 568 N.W.2d 440, 450 (Minn.1997). Improper comment is prejudicial if it likely played a substantial part in influencing the jury to convict. *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988).

The prosecutor stated, in part:

And what had just happened? A woman was walking down the street when a car pulled up. A man got out * * * wearing dark dress clothes, with a gun and he—there is a huge confrontation.

[A witness] saw this woman walking down the street and a man in dark dress clothes pulling a gun and fighting.

* * * *

Who was the bunch of people? This white female who's being assaulted?

* * * *

This woman that's being beaten up isn't going to * * * testify that he had a gun * * *.

You don't have to decide who he assaulted, what happened to them, where did they go, how did he know them.

James points out that the transcript of the 911 call does not indicate that a woman was being assaulted, only that the man "was trying to get her to get in the car," and argues that these statements were inflammatory.

 But even if the prosecutor's statements were improper, it is highly unlikely that the statements had any effect on the jury's verdict. The statements were made immediately after the prosecutor played a tape recording of the 911 call, and the district court instructed the jury that "[a]rguments or statements by the lawyers are not evidence." And the state had a strong case: the testimony of the police officers, the holster found in James's pants pocket, and the handgun found at the southwest corner of the house. We conclude that the prosecutor's statements were not prejudicial.

## VI.

James submitted a pro se supplemental brief that raises issues related to racial profiling, characterization of an expert witness, credibility of the police officers, and failure to disclose exculpatory material. After careful consideration, we find that James's claims provide no basis for relief.

## DECISION

The district court properly (1) allowed the prosecutor's peremptory strikes of an African–American veniremember and a Native–American veniremember, (2) exercised its discretion in removing an inattentive prospective juror, and (3) ruled that James's prior felony conviction was admissible for impeachment purposes. Circumstantial evidence was sufficient to support the jury's verdict, the prosecutor did not commit prejudicial misconduct, and

James's pro se brief provides no basis for relief.

**Affirmed.**