*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2255**

State of Minnesota,
Respondent,

vs.

Jesse Keith Fultz,
Appellant.

**Filed December 1, 2014
Affirmed
Kirk, Judge**

Kanabec County District Court
File No. 33-CR-13-146

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

Barbara McFadden, Kanabec County Attorney, Mora, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Kirk,

Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

On appeal from his convictions of theft of a motor vehicle and possession of a controlled substance, appellant contends that the district court abused its discretion by allowing a testimonial hearsay statement into evidence and admitting his prior convictions for impeachment purposes. We affirm.

**FACTS**

At approximately 9:23 a.m. on May 16, 2013, J.S. called 911 to report that her boyfriend, appellant Jesse Keith Fultz, had stolen her vehicle, a grey Nissan Xterra. Kanabec County Deputy Sheriff Alex Gerhardson responded to J.S.'s call and met J.S. at her residence. Around 2:00 a.m. that morning, J.S. awoke and realized that her vehicle was missing. J.S. called appellant, who had been at her home the previous evening, and demanded that he immediately return her vehicle. Appellant told her that he would return the vehicle in 25 minutes but failed to do so. While J.S. waited for appellant, she searched one of appellant's two bags that he had left at her house and discovered her CDs and her son's missing video games, which appellant had previously claimed had been stolen. Deputy Gerhardson searched the bags and discovered drug paraphernalia, including a cell phone, a digital scale, a broken glass bulb, a silver container, and straws and containers, tucked among appellant's clothing.

Later that same morning, Kanabec County Sergeant Kevin Braiedy responded to a homeowner's call about two suspicious-looking men who had recently walked across her neighbor's yard and into the adjacent woods. When Sergeant Braiedy arrived at the

neighbor's residence, he observed a Nissan Xterra parked on the street matching the description of J.S.'s stolen vehicle. The neighbor pointed out to Sergeant Braiedy the trail that the men had followed into the woods. Sergeant Braiedy and Kanabec County Deputy Sheriff Seth Griffin walked along the trail and eventually located two males, who were later identified as appellant and Jeremy Kellum, attempting to hide underneath a pine tree. The deputies handcuffed both men and patted them down. They found a set of brass knuckles in appellant's front pants pocket and a small black bag containing a small amount of marijuana residue hidden in appellant's waistband. The deputies also recovered two glass pipes with white residue, a digital scale, and a metal pipe with some white residue in it underneath the tree.

While handcuffed, appellant continued to clench one of his fists and failed to heed the deputies' instruction to open his hand. Deputy Griffin tased appellant and appellant relaxed his grip and opened his hand, revealing two baggies containing a crystal-like substance. Chemical analysis conducted by the Minnesota Bureau of Criminal Apprehension determined that one of the baggies contained eight grams of methamphetamine.

In June, respondent State of Minnesota charged appellant with numerous crimes, including: (1) second-degree possession of a controlled substance; (2) fifth-degree possession of a controlled substance; (3) theft of a motor vehicle; (4) obstruction of the legal process; (5) possession of metal knuckles; (6) driving after suspension of his driver's license; and (7) attempted theft. Appellant pleaded not guilty to all of the charges and requested a jury trial.

3

Before trial, the state moved to admit impeachment evidence of appellant's felony convictions within the last 10 years, all convictions for crimes involving dishonesty or false statements, and evidence of appellant's probationary status at the time of the alleged offenses under Minn. R. Evid. 609. Appellant's criminal record includes 11 prior gross misdemeanors and felonies. Appellant opposed admission of his prior drug offenses because they were a stipulated-to element of the fifth-degree controlled substance charge and were the same as the crime charged. Appellant also opposed admission of the 2001 fourth-degree criminal sexual conduct conviction because of its potentially prejudicial effect on the jury and requested that evidence concerning his probationary status not be admitted to the jury.

After considering the relevant factors, the district court ruled that appellant's previous felony convictions were "fair game" for impeachment if he chose to testify given his numerous prior offenses and poor track record on probation. Specifically, the district court ruled that the state could impeach appellant with the 2003 and 2004 convictions of providing false information to police, the 2009 offense of first-degree criminal damage to property, the 2007 offense of felony check forgery, and the 2010 violation of a no-contact order, but it barred evidence of the 2001 offense for fourth-degree criminal sexual conduct under Minn. R. Evid. 609. The district court opined that the state could use appellant's prior drug convictions as impeachment evidence on the condition that they be referred to as prior unspecified felonies and appellant stipulated to the priors as an element of the fifth-degree controlled substance charge. Appellant stipulated to having a fourth-degree controlled substance conviction in 2004, a fifth-

4

degree controlled substance conviction in 2005, and a fifth-degree drug possession conviction in 2010, which were admitted as unspecified felonies.

During the three-day jury trial, J.S. testified that on the evening of May 15, she had placed her car keys in her purse rather than putting them in their usual spot by the door out of fear that appellant might attempt to take her vehicle while she was asleep. J.S. denied giving appellant permission to use her vehicle on May 15 or 16.

Appellant testified on his own behalf and insisted that he had merely borrowed J.S.'s vehicle. He admitted that his mother had informed him that morning that the vehicle had been reported stolen and J.S. had demanded that he immediately return the vehicle. Appellant explained that J.S. routinely allowed him to drive her vehicle in exchange for babysitting her son, paying her bills, and facilitating exchanges between J.S.'s son and her son's dad in the Twin Cities. Appellant explained that he had not stolen J.S.'s CDs and her son's video games, but had packed the items in his bag in anticipation of playing the games with J.S.'s son at his mother's residence later that week.

When questioned by the prosecutor why he had abandoned J.S.'s vehicle and walked into the woods with Kellum, appellant testified that Kellum, who had been driving J.S.'s vehicle around Mora, panicked when he saw a police vehicle because he did not have a valid driver's license and suggested that they hide in the woods. They exited J.S.'s vehicle and walked along a trail into the woods and sat down underneath a tree. Appellant accused the police of beating him up after he was handcuffed and planting the methamphetamine on his person because they held a grudge against him.

5

The jury found appellant guilty of all counts. The district court sentenced appellant to 30 months for theft of a motor vehicle and 132 months for second-degree possession of a controlled substance, to be served concurrently, and ordered the remaining sentences to be served concurrent with the first two sentences. The district court did not sentence on the lesser-included offenses of fifth-degree possession of a controlled substance and attempted theft. This appeal follows.

**D E C I S I O N**

**I.     The district court did not err by allowing Sergeant Braiedy's testimony.**

The Confrontation Clause of the United States Constitution bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004). Whether the admission of evidence violates a defendant's rights under the Confrontation Clause is a question of law that is reviewed de novo. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006).

Appellant argues that his conviction for motor vehicle theft must be reversed because the district court erred in allowing Sergeant Braiedy to testify that Kellum told him after being arrested and *Mirandized* that he knew that appellant "was not to have possession" of J.S.'s vehicle. The state argues that appellant forfeited any right to raise a Confrontation Clause objection on appeal because he only raised a hearsay objection at trial. At trial, appellant objected to Sergeant Braiedy's testimony as inadmissible hearsay, but the district court overruled appellant's objection under the statement-against-interest exception to the hearsay rule. *See* Minn. R. Evid. 804(b)(3).

6

The state correctly notes that a challenge to the introduction of hearsay testimony at trial cannot be construed as a Confrontation Clause challenge on appeal. *See State v. Rossberg*, 851 N.W.2d 609, 618 (Minn. 2014) (holding defendant failed to preserve for review on direct appeal a claim that his right of confrontation was violated when defendant's objection to admission of victim's statements was based solely on the residual hearsay exception and it was not apparent from the context of defendant's argument that the Confrontation Clause was the basis for defendant's challenge to evidence); *see also State v. Hull*, 788 N.W.2d 91, 100 (Minn. 2010) (holding that "a hearsay objection at trial is not sufficient to preserve a confrontation clause objection on appeal" (quotation omitted)).

When a defendant fails to object to the admission of evidence at trial, this court reviews the admission for plain error, including constitutional challenges. *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). Because appellant failed to object at trial, his Confrontation Clause challenge is subject to plain-error review and warrants reversal if: (1) an error occurred in the district court; (2) the error was plain; and (3) the error affects his substantial rights. *See id.* Plain error exists if "the error contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error affects the defendant's substantial rights if the error was prejudicial and affected the outcome of the case. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). Appellant bears the burden of persuasion on the third prong. *Id.* If these three prongs are satisfied, we then determine "whether the error seriously affects the fairness, integrity, or public

reputation of the judicial proceeding before granting relief." *Hull*, 788 N.W.2d at 100 (quotation omitted).

The state concedes, and we agree, that Kellum's custodial, post-*Miranda* statement to Sergeant Braiedy was testimonial under *Crawford*. "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364; *see also State v. Wright*, 726 N.W.2d 464, 474 (Minn. 2007) (stating testimonial statements are those made "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution" (quotation and italics omitted)). Moreover, the record establishes that while Kellum was not called to testify at trial, he was included on the state's list of potential witnesses, which indicates that he was available to testify. Hence, the district court's admission of Sergeant Braiedy's testimony regarding Kellum's statement was error.

The state argues that appellant failed to establish that the error was plain because in the absence of an objection, "the question . . . is *not* whether the [district] court erred in admitting the testimony, because the court was not given the opportunity to make that decision." *See State v. Vick*, 632 N.W.2d 676, 685 (Minn. 2001). Instead, the question is whether the district court committed plain error by "fail[ing] to sua sponte strike the testimony or to provide a cautionary instruction." *Id.* We decline to adopt the state's reasoning on the second prong because *Vick* involved unobjected-to *Spreigl* testimony, and was decided before *Crawford*. Here, because the district court's admission of

8

Sergeant Braiedy's testimony regarding Kellum's statement contravened the requirements of the Confrontation Clause, we conclude that the second prong of the plain-error test is satisfied.

Despite the fact that plain error occurred, we conclude that appellant's substantial rights were not affected. The challenged testimony supported an inference that appellant knew that he had stolen J.S.'s vehicle, which in turn could have influenced the jury's decision to convict him of motor vehicle theft. But the state presented stronger evidence on this point, including J.S.'s consistent testimony that she had placed her keys in her purse in order to prevent appellant from taking her vehicle, and that she had told appellant that he did not have permission to take her vehicle without her consent. Appellant and Kellum also acted suspiciously when they abandoned J.S.'s vehicle and fled into the nearby woods after seeing a squad vehicle. Evidence of flight suggests consciousness of guilt. *State v. Bias*, 419 N.W.2d 480, 485 (Minn. 1988). Therefore, we conclude that admission of Sergeant Braiedy's statement was not plain error affecting appellant's substantial rights.

## II. The district court did not abuse its discretion in admitting evidence of appellant's prior felony convictions for impeachment purposes.

We review a district court's ruling on the impeachment of a witness by prior conviction under a clear abuse of discretion standard. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn. 1998). Whether the probative value of the prior convictions outweighs their prejudicial effect is a matter within the discretion of the district court. *State v. Graham*, 371 N.W.2d 204, 208 (Minn. 1985). Minn. R. Evid. 609(a)(1) allows the admission of

9

evidence of a witness's past convictions for impeachment purposes if the crime was punishable by imprisonment in excess of one year and the district court determines that the probative value of admitting the evidence outweighs its prejudicial effect. When making this determination, the district court considers five factors set out in *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978):

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

### A.    Impeachment value.

"[A] prior conviction can have impeachment value by helping the jury see the 'whole person' of the defendant and better evaluate his or her truthfulness." *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006). Appellant argues that the district court improperly admitted evidence of his prior felony convictions under the "whole person" doctrine, contending that the criminal damage to property conviction and three unspecified felonies are not probative of his credibility because they are not crimes of dishonesty. Appellant contends that Minnesota courts mistakenly allow all previous convictions to be admitted for impeachment purposes under the "whole person" doctrine, which defeats the rule's intended purpose of only allowing convictions that bear upon a witness's character for truthfulness. Appellant implicitly requests that we recast the first *Jones* factor to only allow impeachment evidence of crimes involving dishonesty.

10

But we previously rejected a similar argument that "the 'whole person' analysis makes the first *Jones* factor an 'anything goes' test." *See State v. Williams*, 757 N.W.2d 504, 509 (Minn. App. 2008), *aff'd*, 771 N.W.2d 514 (Minn. 2009). Moreover, in *State v. Hill*, the Minnesota Supreme Court held that rule 609(a) allows a party to impeach a witness with an unspecified felony conviction, so long as the underlying conviction is either a felony or a crime of dishonesty, and the district court finds its probative value to outweigh any prejudicial effect. 801 N.W.2d 646, 651 (Minn. 2011). "*[A]ny* felony conviction is probative of a witness's credibility, and the mere fact that a witness is a convicted felon holds impeachment value." *Id.* at 652. Here, the district court properly found appellant's challenged felony convictions to be admissible under rule 609(a).

## B.     Date of conviction and subsequent history.

Convictions occurring within 10 years of trial are presumptively not stale. *State v. Gassler*, 505 N.W.2d 62, 67 (Minn. 1993). Appellant challenges the admission of his 2003 and 2004 false information to police convictions and the 2004 controlled substance conviction, arguing that the district court did not consider whether these convictions were still probative, i.e., not stale, given that they occurred almost 10 years before trial. Here, the record shows that the convictions occurred less than 10 years before trial, and the district court ruled that it would allow impeachment evidence of these convictions because they were "fair game"—meaning that they were probative of appellant's truthfulness. The district court did not abuse its discretion by determining that the second *Jones* factor favors admission.

11

## C.    Similarity of Offenses.

The greater the similarity between the alleged offense and a past conviction, the more likely it is that the conviction is more prejudicial than probative. *Swanson*, 707 N.W.2d at 655. Appellant argues that the district court improperly allowed him to be impeached by his 2003 and 2004 drug offenses by referring to these crimes as unspecified felonies because these convictions do "not provide the jury with anything to assess his credibility." A district court may allow a witness to be impeached with an unspecified felony conviction so long as the impeaching party can show that its probativeness outweighs its prejudicial effect under rule 609(a)(1). *Hill*, 801 N.W.2d at 651. Here, the district court acted properly because it found the prior drug convictions were admissible under Minn. R. Evid. 609(a), and it negated any possibility of prejudice by requiring the state to refer to the prior drug convictions as unspecified prior felony offenses. The district court did not abuse its discretion when it determined that the third *Jones* factor weighed in favor of admission.

## D.    Importance of appellant's testimony and centrality of the credibility issue.

Appellate courts may consider the fourth and fifth *Jones* factors together. *See Swanson*, 707 N.W.2d at 655 (grouping the fourth and fifth factors together). "If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." *Id.* Appellant concedes that the district court properly balanced these factors, but again contends that it was inappropriate to allow the convictions under the "whole person" doctrine. As we noted earlier, the district court

acted properly in using the "whole person" doctrine. *See Williams*, 771 N.W.2d at 518-19.

Because none of the *Jones* factors weigh against admission of appellant's prior convictions for impeachment purposes, the district court did not abuse its discretion by ruling that the evidence was admissible under Minn. R. Evid. 609(a)(1).

**III.    Appellant's pro se supplemental brief does not raise any issues of merit.**

When a brief does not contain an argument or citation to legal authority in support of allegations raised, the allegation is considered to be waived. *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002). We disregard any allegations made outside of the record. *See* Minn. R. Crim. P. 28.02, subd. 8 (stating that "[t]he record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcript of the proceedings, if any").

In his pro se supplemental brief, appellant argues that he is not guilty of all charges because the police framed him by planting evidence at the scene of the crime and viciously assaulted him. Appellant offers no evidence to support his claims and does not cite to any legal authority. For these reasons, we consider his allegations to be waived.

**Affirmed.**

13