*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1942**

State of Minnesota,
Respondent,

vs.

William James Holisky,
Appellant.

**Filed October 26, 2015
Affirmed
Stoneburner, Judge***

St. Louis County District Court
File No. 69VI-CR-14-90

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Stoneburner, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

Appellant challenges his conviction of fourth-degree assault, arguing that the evidence is insufficient to support the conviction and that the district court erred in ruling that a prior conviction could be used for impeachment if appellant testified. We affirm.

## FACTS

In early 2014, appellant William James Holisky was one of about ten prisoners being transported from jail in Duluth to district court in Virginia by M.P., a sheriff's deputy. A female corrections officer, J.W., took charge of the prisoners when they arrived in Virginia. Holisky, who outweighed J.W. by about 85 pounds and admits that he has a problem getting along with corrections officers, immediately criticized J.W.'s handling of the prisoners and taunted her with name calling, sarcasm, and belittling remarks. J.W. chose to separate him from the other prisoners.

Holisky refused J.W.'s request to leave the group holding room, asking her why she didn't "come in here and make me?" M.P. repeated the request for him to leave the room, whereupon Holisky took a fighting stance and told M.P. to "[c]ome in and see what happens." Holisky became more compliant only when M.P. threatened to tase him.

M.P. and J.W. had to pull Holisky to the new cell because he resisted movement. Holisky stiffened his upper body and clenched his fists. At the door of the cell, Holisky taunted J.W. about the fact that her hands were shaking as she unlocked the cell door. J.W. responded that anybody's hands would shake due to the situation Holisky caused.

As J.W. secured Holisky's free hand in the cell, he said, in a threatening tone, "the party is just going to get started" whereupon J.W. decided she needed to handcuff Holisky to the cot in the cell. J.W. asked M.P. to retrieve another pair of handcuffs. When M.P. left the cell, Holisky said that J.W. was "going to lose [her] f---king job today." J.W. bent down to retrieve something that had been dropped; she felt herself being pulled toward Holisky and felt "an immense pain" on her right shin. J.W. testified that Holisky first pulled her forward and then whipped her with the chain attached to his restraints, causing her to scream in pain. As she resisted his pulling, she struck her elbow on the concrete brick wall. J.W. testified that Holisky grabbed at her crotch and stomach area and that as they struggled she repeatedly screamed about being assaulted, hoping to alert M.P. to the problem. As J.W. attempted to restrain Holisky, he laughed at her and told her that she should quit her job. M.P. returned to the cell and assisted J.W. in pinning Holisky down to the cot. J.W.'s leg was bleeding, her elbow hurt from having struck a concrete wall during the incident, and she had a minor cut on her hand.

Holisky was charged with one count of fourth-degree assault on a correctional employee, intentional infliction of or attempt to inflict bodily harm, and one count of fourth-degree assault on a correctional employee, intent to cause fear of immediate bodily harm or death. Before trial, the state gave notice of its intent to impeach Holisky, should

3

he choose to testify, with prior convictions of second-degree assault and terroristic threats.[1]

The district court ruled that the state could use the terroristic-threats conviction for impeachment but not the assault conviction, because the district court determined the assault conviction is more prejudicial than probative. Holisky testified, and the district court instructed the jury on the limited use of the impeachment evidence. The jury acquitted Holisky of the count charging infliction of harm but found him guilty of fourth-degree assault, intent to cause fear of bodily harm. This appeal followed.

**D E C I S I O N**

**I.      Sufficiency of the evidence**

It is a felony to commit an assault on "an employee of a correctional facility" that "inflicts demonstrable bodily harm." Minn. Stat. § 609.2231, subd. 3(1) (2014). "Assault" is defined, in relevant part, as "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1) (2014). Holisky argues that the state failed to prove that he intended to cause J.W. to fear infliction of immediate bodily harm and therefore the evidence is insufficient to support the conviction.

On review of a sufficiency-of-the-evidence claim, this court painstakingly reviews the record to determine whether the evidence, when viewed in a light most favorable to the conviction, is sufficient to permit the jurors to reach a guilty verdict. *State v. Webb*,

---

[1] The terroristic-threats offense was recently renamed "Threats of Violence." 2015 Minn. Laws ch. 21, art. 1, § 109, subd. 10 (to be codified at Minn. Stat. § 609.713 (Supp. 2015)).

440 N.W.2d 426, 430 (Minn. 1989). We assume that the jury believed evidence that supports the verdict and disbelieved conflicting evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

"[I]ntent is a 'subjective state of mind usually established only by reasonable inference from surrounding circumstances.'" *State v. Slaughter*, 691 N.W.2d 70, 77 (Minn. 2005) (quoting *State v. Schweppe*, 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1975)). Because the element of intent, in this case, is based solely on circumstantial evidence, we apply a two-step analysis to determine whether the evidence supports the verdict. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). The first step identifies the circumstances proved, and the second step examines reasonableness of inferences that might be drawn from those circumstances. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). To affirm a conviction, we must conclude that "the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply that the inferences that point to guilt are reasonable." *Id.* (quotations omitted).

The state proved that: (1) Holisky is antagonistic toward all corrections officers and that he made belligerent and crude obscene comments to J.W. from their first encounter, questioning her authority and competence; (2) Holisky refused to obey J.W.'s request to leave the group holding room, assumed a "fighting stance" when M.P. repeated the request, and told M.P. that he should "come inside [and] see what happens"; (3) Holisky swore, raised clenched fists, and passively resisted movement to the single-cell holding room such that he had to be pulled by J.W. and M.P.; (4) Holisky then taunted J.W. about her shaking hands, and threatened her that "[t]he party is just starting"

5

and that she was going to lose her job that day; (5) Holisky deliberately jerked his arms to pull the restraints out of J.W.'s hands, causing the restraint chain to whip her in the shin, which in turn caused J.W. to fall into him where he continued to pull her towards him as he grabbed her crotch and stomach area; and (6) after J.W. restrained him, Holisky laughed at her and told her she should quit her job, and he told another officer that J.W. was "mouthy" and he had "to take care of it."

We conclude that, despite Holisky's claims that he was "just bantering [with J.W.]," the circumstances proved are consistent with guilt of intent to cause J.W. to fear bodily harm and are inconsistent with any rational hypothesis other than guilt. *See State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000) ("A jury is permitted to infer that a person intends the natural and probable consequences of their actions."). Holisky continued to escalate his obnoxious behavior to the point of jerking J.W. towards him while they were alone in a small holding cell, and he actually caused visible injury to J.W.

Holisky asserts that J.W. was not frightened, as evidenced by her taking her eyes off him when she bent forward to look for a dropped object. But the focus is on the intent of the actor, not the response of the victim. *State v. Ott*, 291 Minn. 72, 75, 189 N.W.2d 377, 379 (1971). And the evidence demonstrates that J.W. was, in fact, in fear of bodily harm as evidenced by her decision to remove Holisky to the single-cell holding room and handcuff him to the cot, her statement to Holisky that his conduct in the group-holding room caused her hands to shake, and her screams to alert M.P. to the struggle with Holisky. The lack of merit to Holisky's assertion that he could not have harmed J.W.

6

because he was restrained is demonstrated by evidence that J.W. was harmed by his conduct. The evidence of intent to cause J.W. fear of immediate bodily harm is sufficient to support the jury's guilty verdict.

## II. Admission of prior conviction as impeachment evidence

Holisky also asserts that the district court abused its discretion by allowing evidence of his terroristic-threats conviction to be admitted as impeachment evidence. We review the admission of impeachment evidence for a clear abuse of discretion. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn. 1998). Evidence of a prior crime that does not involve dishonesty is admissible as impeachment evidence only if the crime was a felony, is not stale, and the probative value of the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a), (b). To determine whether the probative value outweighs prejudicial effect, the district court, as required by caselaw, applied a five-factor test set out in *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978).

Holisky specifically challenges the district court's analysis of the fourth *Jones* factor: the similarity of the past crime with the charged crime. Generally, the more similar the prior conviction to the charged offense, the greater the danger that the jury will use the evidence for substantive, rather than impeachment, purposes. *State v. Lloyd*, 345 N.W.2d 240, 247 (Minn. 1984).

Holisky argues that because the district court found his conviction of second-degree assault too similar to the charged offenses to permit admission, it could, logically, only come to the same conclusion with regard to his conviction of terroristic threats, which, he argues, is "extremely close" to acting with intent to cause the fear of harm.

7

Had Holisky made overt threats to J.W. we might agree; but in this case, there were, as Holisky himself argues, no overt verbal threats. Given the circumstances in this case, we conclude that the district court did not err in finding that the fourth *Jones* factor did not favor exclusion of evidence of Holisky's conviction of terroristic threats. Because Holisky does not challenge the district court's analysis of any of the other *Jones* factors, we conclude that the district court, which instructed the jury on the limited use of the evidence, did not abuse its discretion by admitting evidence of Holisky's terroristic-threats conviction for impeachment.

**Affirmed.**